## Gravenstine's Appeal.

*Practice as to bill in equity where parties are improperly named as complainants.—Right of stockholder to restrain corporate acts by injunction.—Receiver not to be appointed where company is not a party to the bill.*

1. When parties named as complainants in a bill in equity are joined without their knowledge or assent, the bill as to them should be dismissed.

2. Though a stockholder of a corporation may interfere in equity for the protection of the company, yet something less or more than what is allowed by the terms of the charter, must have been done by the managers or directors, to authorize such an interference; and where a debt authorized by the company is created by and with the consent of the stockholders and directors, and judgment confessed therefor, a consenting stockholder is not entitled to an injunction against an execution issued thereon.

3. Thus, where one who had been a stockholder, and had, under a resolution, voted for by him as such, sold to the company his stock, taking the company's note therefor, less expenses, it was held that he could not claim as a stockholder; nor as creditor could he ask an injunction to restrain another creditor, whose debt was of the same nature in creation and consideration, from obtaining satisfaction by means of a prior levy upon the corporation effects.

4. Where the company was not a party to the bill, nor in court upon notice for a preliminary injunction, it was held error to appoint a receiver.

APPEAL from the Common Pleas of *Philadelphia*.

This was an appeal, by John Gravenstine and Jacob Gravenstine, from the decree of the court below, awarding a perpetual injunction against the collection by execution of a judgment held by Jacob Gravenstine against The Philadelphia Coal Oil Company, and appointing a receiver to take charge of the property of the company.

The bill, which was filed by John Evans, in his own name and

[Gravenstine's Appeal.]

that of D. J. McCann and J. H. Johnson, with leave to add other creditors and stockholders, set forth that on or about the 6th of May, A. D. 1859, the complainants with others formed a company under the provisions of an Act of Assembly entitled "An Act to encourage Manufacturing Operations in this Commonwealth," approved the 7th day of April, A. D. 1849, and the supplements thereto, for the purpose of making and purifying oil from coal and other carbonaceous substances, and the same was duly incorporated under the name of "The Philadelphia Coal Oil Company," with a capital stock of $100,000, divided into two thousand shares of $50 each.

That they are now members of the said company, and own about three hundred and forty-six shares of the capital stock thereof; that the company went into operation on or about the time last above mentioned, and since that time has become indebted to divers persons in a large amount of money; that though this oil might be profitably made, yet, intending to break up and destroy the company if his own pecuniary interest could be promoted, John Gravenstine, on or about the 13th day of September 1859, contrived and procured a special meeting of the board of directors of said company, to be called ostensibly for the purpose of considering the financial difficulties of and devising means for the furtherance of the interests of the said company, but in reality for the purpose of giving to the said Gravenstine an unjust preference and advantage over the other stockholders and creditors of said company; that the said Gravenstine contrived and caused and procured a special meeting of the directors of said company to be holden, in pursuance of the said call on, to wit, the 13th day of September, A. D. 1859, and then and there returned to the company three hundred and seventy-five shares of the capital stock of the said company; and, contrary to equity and justice, caused and procured the passage of a resolution by the directors of the said company at the said special meeting last above mentioned, that the note of said company should be given to Jacob Gravenstine, the brother of John Gravenstine, for the said three hundred and seventy-five shares of the capital stock returned by the said John Gravenstine, and, contrary to equity and justice, caused the said promissory note of the said company to be given to the said Jacob Gravenstine for the sum of $1290; that, contrary to equity and justice, and in fraud of the rights of the creditors and stockholders of the said company, said John Gravenstine on, to wit, the 26th day of September, A. D. 1859, caused and procured the passage of a resolution by the board of directors of the said company that judgment be confessed on the said note last above mentioned, and that in pursuance of the said resolution the said company by its officers confessed judgment thereon; that said John

Gravenstine on, to wit, the 30th day of September, A. D. 1859, caused and procured a judgment to be entered upon the said note in the District Court for the city and county of Philadelphia; that at a meeting of the directors of the said company, held on the 3d day of October, A. D. 1859, one of the complainants, to wit, John Evans, presented a remonstrance against the action of the said board in confessing said judgment, and threatened to take legal proceedings to protect his rights and those of other stockholders of the said company, unless the said resolutions were rescinded, the note cancelled, and the said judgment satisfied, and sent a notice to the said John Gravenstine to that effect; that it was then and there mutually agreed by and between the said John Evans and the said board of directors of the said company, that a judgment-note should be given to the said John Evans for three hundred shares of the stock of said company then held by the said John Evans, and executions should be issued on both the said judgments, and placed in the hands of the sheriff simultaneously, and the proceeds applied first to the payment of the just debts of the company, and afterwards to be divided equally, share and share alike, amongst the stockholders of the said company; that notwithstanding said agreement, and contrary to justice and equity, and in fraud of the creditors and stockholders of the said company, said John Gravenstine caused and procured a writ of execution to be issued on the said judgment entered up in favour of the said Jacob Gravenstine, and has caused the goods and chattels of the said company to be levied on under and by virtue of the said writ, and to be advertised for sale by the sheriff at public sale or vendue on, to wit, Friday, the 14th day of October, A. D. 1859; and praying for an injunction and a receiver as above stated.

The answer admitted the existence of the corporation, and the membership of respondents, averred the necessity for the purchase of real estate for the erection of the works, and the purchase of certain real estate and machinery from John Gravenstine, on the faith of the resolution of May 23d 1859, allowing him to return his shares, but that no offer was made to return them until complainant Evans had given notice of his intention to return his stock under that resolution.

That the proposition of respondent to return a portion of his stock was acquiesced in by the whole board, and the note for their value less expenses was given without objection, and was approved at a subsequent meeting of the board; that a similar note and judgment was given to complainant Evans and other stockholders, and that an execution was taken out by complainant, and a levy made under it by his order, on the same property which had been levied on by order of respondent for the purpose of defeating his allowed priority, for which purpose also this bill

[Gravenstine's Appeal.]

in equity was filed by him, and a rule taken to open the judgment of respondent.

The answer further averred that the names of J. H. Johnson and D. J. McCann were used as complainants without their knowledge or consent; that if the board had transcended their power, the company should have been made parties; that the bill was not filed by or for the corporation, but only by and for complainants, who at the time held no stock of the company; and denying all improprieties averred in the bill, and the insolvency of the company.

The answer also averred that the note was taken in the name of Jacob Gravenstine for no improper purpose or reason, but solely because it was thought improper to have it given to the person who was president of the board of directors; and that there was no agreement between respondent and Evans in relation to the time of issuing the execution, or the manner of appropriating the proceeds, &c.

October 14th 1859, the Court of Common Pleas granted a special or preliminary injunction restraining the sale, and afterwards on application of John Evans, and appointed Joseph A. Clay, Esq., receiver, to take charge of the personal property of the company. The receiver took possession of the personal property, sold the same, and filed his account November 15th 1860, which was referred November 15th 1860 to Mr. Mitchell to audit.

December 22d 1860, Mr. Mitchell was also appointed master, to take testimony in support of the bill and answer. Having audited the account of the receiver, the master proceeded, under objection and protest of Gravenstine, to make distribution of the funds in the hands of the receiver among the creditors of the Coal Oil Company.

December 19th 1863, the report of the master, and the testimony taken by him, were filed. To which report Gravenstine filed the following exception, viz.: "The master erred in reporting distribution of the fund in the hands of the receiver, as the distribution should be suspended until the final disposition of the bill."

On hearing, the court made the following decree:—

"And now, to wit, April 2d 1864, the above case came on to be heard upon bill, answer, and proofs, and the same having been argued by counsel, upon due consideration whereof it is ordered, adjudged, and decreed by the court that the injunction prayed for in the bill, and granted in the above case, be and the same is made perpetual, and that John Gravenstine and Jacob Gravenstine, and each and every of them, be and they are hereby, for all time hereafter, restrained from all further proceedings upon the judgment entered in the District Court for the city and

[Gravenstine's Appeal.]

county of Philadelphia, of September Term 1859, No. 152, D. S. B., wherein Jacob Gravenstine is plaintiff, and 'The Philadelphia Coal Oil Company' are defendants, and from all further proceedings upon the writ of *fieri facias* issued upon said judgment. And it is further ordered and decreed by the court that the exception filed to the master's report be dismissed, and the report of the master, on the account of the receiver, be confirmed absolutely."

This appeal was then taken, and the following matters assigned for error :—

1. The court below erred in not, upon final hearing, dissolving the injunction granted in this case.

2. In decreeing the injunction to be perpetual.

3. In not dismissing the bill upon final hearing.

4. In appointing a receiver.

5. In dismissing the exception filed by the appellant to the master's report, viz. : " The master erred in reporting distribution of the funds in the hands of the receiver, as the distribution should be suspended until the final disposition of the bill."

*B. Woodward*, for appellant, argued—I. That John Evans was the only párty complainant, he having used the names of D. J. McCann and J. H. Johnson without their knowledge or permission.

2. That it was a fatal objection to the bill that John Evans had ceased to be a stockholder at the time the bill was filed : Cornmeyer *v.* United German Lutheran Church, 2 Sand. Ch. 250 ; 5 Florida 110 ; 4 Russ. Ch. 225 ; 2 Simons's Ch. 237 ; 4 Russ. Ch. 242, 244 ; Mitf. Ch. 400 ; 4 Paige Ch. 510.

3. That it was a fatal objection to the bill that two persons, viz., D. J. McCann and J. H. Johnson were joined as co-plaintiffs, who were neither stockholders nor creditors, and who had no interest whatever in this suit or proceeding : 1 Daniel's Ch. Plead. & Prac. 347 ; 2 Sand. Ch. 250.

4. That the bill was fatally defective in not making " The Philadelphia Coal Oil Company" a party to the same : Robinson *v.* Smith, 3 Paige's Ch. 222, 24 Me. 9, 5 Paige's Ch. 607, 12 Met. 371, and 23 Pick. 108 ; Daniel's Ch. Plead. & Prac. 634.

5. That the bill was fatally defective in not showing or averring that the board of directors of the company had been requested, and wrongfully refused to arrest or check the alleged fraud : House *v.* Cooper, 30 Barb. 157 ; Vanderbelt *v.* Garrison, 5 Duer 689.

6. That the bill was fatally defective in showing, upon its face, that the parties complainant had a full and ample remedy in the District Court where the judgment was entered : Story's Eq. Jur. § 894 ; and

7. That the bill was fatally defective in not containing an aver-ment that the complainant did not participate in the alleged unlawful proceedings, and did not in any way recognise, ratify, or acquiesce in the same.

II. As to the merits of the bill, he argued that the relief prayed for in the bill appears to be sought only upon two grounds:

1. Fraud in the board of directors in receiving Gravenstine's stock, under resolution of May 23d 1859, and in giving him therefor the company's note and judgment. And

2. Fraud in an *intended* violation by John Gravenstine of a *pretended* agreement entered into between John Gravenstine and John Evans, October 3d 1859, to act in concert in issuing their executions, and selling the property of the company.

The answer denies any fraudulent intent, and there being no testimony showing such intent, the only question would seem to be, was the return of Gravenstine's stock, under resolution of May 23d 1859, and the giving of the company's note and judg-ment for the amount paid in thereon less $1.56 per share, which was deducted from Gravenstine's due proportion of the expenses, a legal fraud as between Gravenstine and Evans, who were both directors, and if it was, whether Evans was in a position to take advantage of the same, in this form of proceeding, at the time the bill was filed. Independent of any such resolution as that of May 23d 1859, a corporation may purchase the stock of a stockholder if the purchase be *bonâ fide*. See Angell & Ames on Cor. § 566; Farmers' and Mechanics' Bank *v.* Champlain Trans. Co., 18 Verm. 131; Meighen *v.* Bank, 1 Casey 288; Bank *v.* Green, 3 Watts 374; 10 Foster 456; 5 Johns. Ch. 383-4; 19 Johns. Rep. 480; 14 S. & R. 416.

But when the members of a corporation or copartnership deliberately pass a resolution to purchase all stock offered, by paying therefor the amount paid in less a due proportion of the expenses incurred by the corporation or copartnership, and per-sons, upon the faith of this resolution, subscribe for stock and pay their money, then such a resolution is binding upon at least all persons who were parties to the same, beyond all question: Slee *v.* Bloom, 5 Johns. 360, 382; Taylor *v.* Company, 6 Ohio 176; Eyre *v.* Association, 17 Leg. Int. 148.

The resolution of May 23d 1859, to purchase all stock offered less expenses, was in the nature of an agreement, and equally binding upon all parties to the same. Evans was a warm advo-cate of this resolution, and voted for the same, hence he is estopped from denying its binding effect, so far as he is con-cerned: 6 Ohio 218; 5 Johns. Ch. 360, 382; 17 N. Y. (Smith) 507; 3 Watts 374; 17 Leg. Int. 148.

Under this resolution Evans and the other members of the company, for three hundred and seventy-five shares of stock,

obtained from John Gravenstine $1875·in the month of July 1859, and in two months after, viz., September 13th 1859, the directors purchased his stock under said resolution for $1290, the sum of $580 being retained by the company for his share of the expenses which had been incurred up to that time. Gravenstine, having the right then to call upon the company to receive his stock, it was their duty to pay him for the same, and if they had not sufficient money in the treasury for that purpose they had a right to give him a note for the amount. The resolution to give Mr. Gravenstine the company's note for his stock was passed unanimously, and as Evans was present as a director at this meeting, he is bound by this resolution. The fact that it was passed at a special meeting can make no difference so far as he, Evans, is concerned. It was nothing more than an agreement, which could have been entered into at any time, whether at a meeting or not, and it would bind the parties to it. Besides this, at the next regular meeting of the board, the proceedings had at the special meeting of September 13th 1859, were unanimously adopted and approved, John Evans being present, and voting for their adoption. The next regular meeting of the board was held September 26th 1859, when a resolution to confess judgment to Mr. Gravenstine for the amount of his note was passed unanimously, in order to save the expense of a suit, which the directors had a right to do.

At the meeting held September 13th 1859, after Mr. Gravenstine had returned his stock, and received the company's note therefor, the board repealed the resolution of May 23d 1859, which prevented Mr. Evans from returning his three hundred shares of stock, hence Mr. Evans, at the meeting held October 3d 1859, presented a written protest against the action of the board in receiving Mr. Gravenstine's stock, and giving him a note therefor (or, in other words, as he was a member of the board of directors, he presented a protest against his own action); after the protest had been presented, he then proposed to withdraw the protest upon condition that the board would restore the resolution of May 23d 1859, purchase his stock thereunder, and give him a judgment-note for the amount paid in thereon less·$1.56 per share for expenses. This proposition was agreed to. The resolution of May 23d 1859 was restored, Mr. Evans's stock was received under the same, and a judgment-note was given to him for the amount paid in, less $1.56 per share. Upon Mr. Evans receiving the judgment-note he immediately procured judgment to be entered, and an execution issued thereon, with directions to the sheriff to levy upon and sell the same property that had been levied upon under the Gravenstines' execution, and this execution of John Evans remains to the pre-

sent day in the hands of the sheriff, without any instructions to return the same.

As between Evans and Gravenstine there was no fraud, either actual or constructive, in receiving Gravenstine's stock, and giving him a judgment therefor.

But even if there was a legal fraud, Mr. Evans has estopped himself from setting the same up, by his acquiescence in the alleged fraudulent acts: Story's Equity Jur. §§ 190–1–2–3 & 5; 5 Florida 111; 19 Eng. C. L. & E. 7; Angell & Ames on Cor. 368; 88 E. C. L. R. 761; 3 Younge & Jervis 85; 2 Macnaughton & Gordon 146; 1 Casey 156. Evans was a party to the alleged fraudulent acts, and by returning his stock and accepting the company's judgment-note, he participated in the fruits. A party to a fraud, and particularly one who has shared the benefits thereof, will not be permitted to set the same up: Turnpike Road Company v. McConaby, 16 S. & R. 146; 5 Indiana 166; Evans v. Dravo, 12 Harris 65–7; 10 Watts 320.

As Evans, by his own act, had ceased to be a stockholder before this bill was filed, and having accepted the company's judgment-note for his stock, the whole matter resolves itself into a question between two creditors pursuing the same debtor, and equity will not interfere in a case of that character: Middleton v. Middleton, 15 Leg. Int. 349; 1 Johns. Ch. 49; 6 Id. 87; 1 Paige 41; 5 How. 142.

As to the alleged agreement of John Gravenstine to act in concert with John Evans in issuing their executions, and selling the property of the company, &c., there is not a particle of evidence to sustain it.

This agreement is denied by the answer of John and Jacob Gravenstine, hence it would require two witnesses to overcome the answer: Story's Eq. Jur. § 1528; 12 Harris 159; 7 Casey 387. But instead of there being two witnesses, every witness who testified on that subject denied that such an agreement was entered into. John M. Barstow was the only witness Evans called on that subject, and although at first his testimony would seem to favour such a construction, yet he finally admitted that he was wrong in his impressions. Mr. Gravenstine called two witnesses, who testified most positively that no such agreement was entered into, hence we have the answer and two witnesses against the existence of the alleged agreement on one side, and nothing on the other.

III. It is too clear for argument that as " The Philadelphia Coal Oil Company" was no party to the bill, the court below had no power to appoint a receiver to take charge of their property.

IV. Upon the receiver's filing his account, it may have been proper enough for the court below to appoint a master to audit his account; beyond this the master could not go until the bill

[Gravenstine's Appeal.]

was finally disposed of: Morris Canal Company *v.* Biddle *et al.*, 3 Green's Ch. 222.

As Mr. Gravenstine's judgment stands upon the record as a good and valid judgment, and as an execution is an inseparable incident of every judgment, and as the defendants in that judgment make no objections to its validity, and as John Evans ceased to be a member of the company before his bill was filed, and sustains no relation thereto except as a. creditor thereof, the court below was wrong in not dismissing the bill.

*William S. Pierce*, for appellee.—This is an effort on the part of a stockholder and director of an insolvent company to escape from his liability as a stockholder for the debts of the company, and instead thereof, with the complicity of certain of his co-directors, to convert himself into a creditor of the company, and by virtue of a judgment and execution confessed to him for that purpose, give himself a preference not only over his fellow-stockholders, but over the *bonâ fide* creditors of the company, and for the avowed purpose of defeating the just claim of one of these creditors.

This company was organized, or intended to be organized, under the general law of Pennsylvania for the organization of manufacturing companies, Act of 7th April 1849, and its supplement. There is doubt as to its incorporation, because the terms of the law were never complied with; but in either event the associates or stockholders are liable for the debts of the company: Act 30th April 1843, tit. *Manufacturing Companies;* Purd. Dig. 694, § 31.

The directors of a company stand in the position of agents and trustees: In re The German Mining Company, 27 Eng. Law and Eq. Rep. 158. As such they are bound to protect the interests of the stockholders, to act in good faith to the creditors, and to pursue the law of the association and the law of the land. They could not, therefore, at a special meeting convened "to consider the financial difficulties of the company, and to devise means to further the interests of the company," do any other business than that for which they were convened. Much less could they convert a stockholder into a creditor, and thus defeat the very ends for which they were convened by adding to the embarrassments of the company: Ex parte Lewis, 10 Eng. Law and Eq. Rep. 162.

Lord St. Leonards, in ruling this case, said: "Upon the merits of the case I am clearly of opinion that this is a transaction which ought not to prevail. It is an improper transaction; it was a dealing to allow a certain number of persons who had the command of money to escape from further liability, at the

expense of their copartners, and contrary to the express provisions of the deed under which they were all acting."

The appellant does not seek to establish his claim so much by virtue of its merits as by certain alleged technical defects in the bill of complaint. One of these is, that the Philadelphia Coal Oil Company is not a party to the bill. The company itself makes no objection to this, and has never objected to any of these proceedings. The appellant cannot set up this objection when the company itself does not. And upon the matter now before the court, the only parties in fact to the controversy are the appellant and appellees. The appellees seek to restrain the appellant from an illegal and fraudulent proceeding which is destructive of their rights. It is not the company that the appellees are seeking to reach and restrain, but John Gravenstine the appellant. And the argument he presents is, that he should not be restrained because a party against whom an injunction is not asked, is not technically a party to the bill.

The opinion of the court was delivered, February 6th 1865, by

THOMPSON, J.—The only real party complainant in this bill is John Evans, who claims equitable interference by injunction, on the ground of being a stockholder in "The Philadelphia Coal Oil Company." Very shortly after the filing of the bill by Evans, Johnston filed an affidavit in the case, in which he declared explicitly that he was not aware of the filing of the bill, and that his name was joined as complainant without his direction or approval; and he has taken no part whatever in the proceedings had in the case. McCann neither signed the bill, nor has he employed counsel or taken any part whatever, and it appears that he was not in the city at the time, nor since, at least, as a resident. The answer expressly denies that these persons named as plaintiffs were so named and joined by reason of any interest which they had or desired to assert against the respondents; and that they did not in any manner promote or join in it. The answer as to this is not controverted in the proof and must be taken for true, and the bill as to them ought to have been dismissed at once as uninterested parties: Adams Eq. 314. In fact, all the proceedings are by Evans, and the case was argued here as if he were the sole complainant: we must take it as a case between him as plaintiff, and John and Jacob Gravenstine and the sheriff, respondents.

The last two named defendants will be involved in the decree only in the event of success on part of the plaintiff against John Gravenstine, Jacob being but a trustee for his use, in the judgment against the oil company, and the sheriff, the officer charged with the execution of the *fi. fa.* issued on that judgment.

The title of the complainant to sue in equity, is set forth as

arising out of the fact of his being a stockholder in the oil company, against which the respondent's execution had issued; and in this right he seeks the relief prayed. There may be many circumstances in which a stockholder of a company may interfere for the protection of the company, against even an execution; but something more or less must have been done by its directors or managers than is allowable by the terms of the charter. Fraudulent collusion between the company and any of its creditors, by which its other creditors or stockholders may be wronged or defrauded, would authorize an appeal to equity. But when a company authorizes a debt, and it is created by and with the assent of all the stockholders, as well as the board of directors, and judgment has been confessed by the same authority, I see not much room for equitable interference by a stockholder so consenting. But suppose he may be able to make out a case for interference by showing fraud or mistake in the judgment, why can he not have ample remedy by applying to the court in which the judgment is entered to open or set aside the judgment? In this case the District Court had full power to open the judgment, and could administer, in an issue to try its validity, every equity that could be set up by any proper party against it. Indeed, that was exactly what the plaintiff here attempted. He presented his ground for interference there in substance, as we have it here, and the court refused to interfere. His failure there, I think, ought to conclude him. As, however, it may be more satisfactory to all parties, to treat this appeal on the merits of the bill, answer, and proofs, I waive the point and proceed to view it in this aspect.

The answer positively denies that John Evans was a stockholder when he filed the bill; and a careful examination of the proof fully establishes the fact to be so. It requires no citation therefore of authorities to establish the position, that if a complainant in equity cannot sustain the ground of his bill, he is not entitled to the relief prayed. As at law, so in equity, the *allegata* and *probata* must agree, where proof is required and necessary.

The answer and proofs concur in showing that the complainant was in fact a creditor of the oil company, when he filed his bill, and on argument it was insisted that there was enough in the bill to entitle him to relief on this ground. I do not think the bill sufficient for this, but notwithstanding, let us see how the case would stand on this ground.

The bill charges in substance, that John Gravenstine having obtained a note or obligation of the company for stock sold under the provisions of the resolutions of the stockholder's meeting of the 23d of May 1859, agreed with the complainant, who also held their note for precisely the same consideration, that he would not issue execution on the judgment obtained against the com-

[Gravenstine's Appeal.]

pany until the complainant should obtain judgment on his note, and then that executions should be issued on both, and placed in the sheriff's hands simultaneously: the proceeds to be applied first to the debts of the company, and the overplus to the stockholders. Without being able to understand what consideration there was for such a promise, we are relieved from all difficulty on the subject, in the circumstance that both the answer and proofs are against the existence of any such contract. This allegation presents simply the case of one creditor endeavouring to restrain another whose debt is of the same nature in its creation and consideration from obtaining satisfaction by means of a prior levy on the debtor's goods. It is not easy to discover the equity in this. In looking carefully at the bill, answer, and proofs, we see no ground whatever to administer the equity prayed for by the complainant, and we think there was error in the company below in coming to an opposite conclusion. The allegation of fraud on part of John Gravenstine in procuring the note and judgment is not sustained by the proof.

Although the oil company has not appealed from the decree, yet we see not how, or by what authority, it could legally have been made. It was not a party to the bill, was not in court upon notice for the preliminary injunction, nor in any other way that we discover. Under such circumstances, I cannot but regard the decree, so far as it affects it, as irregular, if not entirely a nullity. The appointment of a receiver was a suspension of its functions and authority over its property and effects, and was equivalent to an injunction to restrain its agents and officers from intermeddling with its own property in any way. Surely this could not be done without making it a party. In fact the receiver appointed under the preliminary decree so proceeded that before final hearing, he had turned the assets into money, and the master's report upon the received account, in which distribution was made, is confirmed in the decree made on final hearing. All this was irregular, and being objected to cannot be sustained. It is unnecessary, however, to expand the discussion of this appeal; from what has been said it is evident that the decree of the Common Pleas must be reversed and the bill dismissed.

And now, to wit, February 16th 1865, decree in this case is reversed, and the bill of the complainant is dismissed with costs.