481 A.2d 1183

Marvin J. LEVIN

v.

Marvin I. BARISH, Avram G. Adler, Arnold Levin, and Howard J. Creskoff, Individually and as partners t/a Adler, Barish, Levin and Creskoff.

Robert C. DANIELS

v.

Marvin I. BARISH, Avram G. Adler, Arnold Levin, Marvin J. Levin and Howard J. Creskoff.

Appeal of Robert C. DANIELS, Appellant.

Marvin J. LEVIN, Appellant,

v.

Marvin I. BARISH, Avram G. Adler, Arnold Levin, and Howard J. Creskoff, Individually and as partners t/a Adler, Barish, Levin and Creskoff.

Robert C. DANIELS

v.

Marvin I. BARISH, Avram G. Adler, Arnold Levin, Marvin J. Levin and Howard J. Creskoff.

Appeal of Marvin J. LEVIN.

Supreme Court of Pennsylvania.

Argued April 12, 1984.

Decided Sept. 4, 1984.

Patrick W. Kittredge, Philadelphia, for Arnold Levin.

Ronald F. Kidd, Philadelphia, for Marvin I. Barish.

Bancroft D. Haviland, Philadelphia, for Avram G. Adler.

Lewis H. Gold, Philadelphia, for Howard J. Creskoff.

Thomas P. Monteverde, C. Oliver Burt, III, Philadelphia, for Marvin J. Levin.

Charles M. Golden, Philadelphia, for Robert C. Daniels.

Before NIX, C.J., and FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Before us are cross appeals from an order of Superior Court. 314 Pa.Super. 347, 460 A.2d 1174. They arise out of the tangled affairs of four law firms, which quickly succeeded each other as different partners of the initial firm serially withdrew. Each firm was apparently founded on oral agreements among the changing partners.

Superior Court affirmed a Philadelphia Common Pleas order[1] directing the escrow agent selected by agreement,[2] the court appointed Conservator and the five former partners of Marvin J. Levin to certify as to the receipt of funds, fees, overhead and return of costs from these partnerships. However, Superior Court vacated that portion of the order directing the agreed to escrow agent, Howard J. Creskoff,[3]

1. *Levin v. Barish,* November Term, 1981, No. 1688, *Daniels v. Barish,* June Term, 1980, No. 3394 (Court of Common Pleas, Philadelphia County) (Order appointing escrow agents, September 22, 1982). Reproduced Record at 66.

2. *Adler, Barish, et al. Consolidated Litigation,* June 1980, No. 3394, November 1981, No. 1688, December 1981, No. 3516 (Court of Common Pleas, Philadelphia County) (Order approving termination and escrow agreements, May 25, 1982). Reproduced Record at 58.

3. Strictly speaking this escrow agent was agreed to by all parties except Marvin Levin. He, however, raises no objection to Creskoff's functioning in that capacity.

and former partner, Robert C. Daniels, to separately escrow for Marvin J. Levin, a percentage of the funds they receive under the Common Pleas order set forth below.

Superior Court construed that part of the order requiring the creation of these escrow accounts as analogous to an order for a mandatory injunction under Pa.R.C.P. 1531. That rule expressly requires the filing of a bond by a non-governmental plaintiff seeking a preliminary or special injunction. Pa.R.C.P. 1531(b). Superior Court thus held that the lower court had erred in directing the deposit in the "Marvin J. Levin Escrow Account" of 10% of the funds received by the escrow agent, Howard J. Creskoff,[4] without the posting of a bond by Levin. Superior Court applied the same reasoning to the Common Pleas order requiring former partner, Robert C. Daniels, to set aside 5% of the funds he receives on files or matters formerly handled by Adler, Barish, Daniels, Levin and Creskoff in a second "Marvin J. Levin Escrow Account". Common Pleas had directed the establishment of these escrow funds as a means of securing the *status quo* among Marvin Levin and all his former partners,[5] until the rights of the parties, *inter se,* had been adjudicated.[6]

We now affirm Superior Court's judgment upholding that part of the Common Pleas order which directed certification of the accounts to Marvin Levin, but reverse that portion of its mandate vacating the order to escrow a percentage of the various successor firms' fees, funds, overhead and return of costs, pending a final settlement among all mem-

4. Under the termination agreements agreed to by all the former partners except Marvin J. Levin.

5. The other partners reached settlements among themselves embodied in Termination Agreements of April 16 and May 25, 1982 and an Escrow Agreement of May 25, 1982, approved by the Court of Common Pleas. *Adler, Barish et al. Consolidated Litigation, supra,* note 2, at 517.

6. *Levin v. Barish, Daniels v. Barish,* Nos. 2849 and 2850 Philadelphia, 1982, No. 1688, November Term, 1981, No. 3394, June Term, 1980, (Slip op. in Appendix to Brief for Appellant, Marvin J. Levin) (Court of Common Pleas, Philadelphia County, December 3, 1982) (Opinion Sur Entry of Order of Court).

bers of the original or successor firms, including Marvin Levin.

## I

The facts underlying these two appeals are chronologically as follows: In 1976, six lawyers formed the partnership of Barish, Adler, Daniels, Levin and Creskoff.[7] This firm was terminated on May 31, 1980 when Robert C. Daniels left it. Daniels filed a complaint in equity in June of 1980 asking for the appointment of a receiver, an accounting and apportionment of assets. In July, he filed a petition for the appointment of a special judge and impoundment of the record. By order of the President Judge of the Philadelphia Court of Common Pleas, Judge Edwin S. Malmed was assigned Daniels's case. He issued orders impounding the record and providing for: (a) an inventory, (b) distribution of certain assets, (c) establishment of a custodial account for all fees under the joint control of the various counsel for the parties and (d) designation of a C.P.A. to prepare and submit an account of the firm's operations from February 29, 1976 through May 31, 1980.

In March of 1981, Marvin J. Levin notified his four partners in the successor firm of Barish, Adler, Levin and Creskoff of his withdrawal, resulting in termination of the firm as then constituted. That withdrawal and termination was effective March 31, 1981. On November 12th of that year, Marvin Levin filed his complaint in equity claiming that he had been wrongfully excluded from his proportionate partnership interest in the assets of the several firms. In his prayer for relief he sought appointment of a receiver, an accounting of the assets, and other equitable relief. At this point Marvin Levin and Robert Daniels were both seeking similar equitable relief in their separate actions.

In December of 1981, Robert C. Daniels filed a petition for a Rule to Show Cause why a receiver should not be

7. These six attorneys had been members of the firm of Freedman, Borowsky and Lorry. The 1976 partnership appears still to be entitled to fees from cases previously handled in that firm.

appointed in his action against the partners initially remaining in Barish, Adler, Daniels, Levin and Creskoff, including Marvin J. Levin. The remaining partners [8] were then also engaged in yet a third termination dispute among themselves. After several conferences in January among the court and all parties, the three cases were consolidated and Judge Malmed issued an order on February 22, 1982 appointing Morris M. Shuster temporary receiver of the property, assets, business and affairs of all the several firms.[9] That order specified that "counsel for all parties have also agreed that no bond or security is required." This appointment was rescinded on May 25, 1982, after the court approved the settlement negotiated among all the parties, with the exception of Marvin Levin. In accordance with that settlement, Howard J. Creskoff, one of the ex-partners, was named escrow agent for the funds in dispute among Avram G. Adler, Marvin I. Barish, Arnold Levin and Howard J. Creskoff. The court's order of May 25, 1982 approving the settlement agreements specifically noted: "Nothing in any of the described Agreements or in this Order shall in any way affect such claims or obligations as may be held or due from Marvin J. Levin and all proceedings are without prejudice to such rights as he may have." This escrow arrangement has not been challenged by the parties to these appeals although it serves as the foundation on which the two challenged escrow accounts were subsequently created.

After a further conference among the ex-partners, the court issued another order on September 22, 1982. This is the order which precipitated the appeals now before us. It directs that all future receipts from files and matters in which appellees Barish, Adler, A. Levin and Creskoff have

---

**8.** Excluding both Daniels and Marvin Levin who each had, as stated, his own dispute with all of them.

**9.** *Daniels v. Barish,* No. 3394, June Term, 1980, *Levin v. Barish,* No. 1688, November Term, *Adler, Barish, Levin and Creskoff v. Barish,* No. 3516, December Term, 1981 (Court of Common Pleas, Philadelphia County, February 22, 1982) (Order appointing Morris M. Shuster as Receiver).

an interest arising out of the several antecedent law firms [10] be paid over promptly to Howard J. Creskoff as escrowee under the May 25th order entered on agreement. The September 22nd order also directs Howard J. Creskoff and Robert C. Daniels to establish the two separate escrow accounts now under challenge, entitled "Marvin J. Levin Escrow Accounts".

On the first of these accounts Howard J. Creskoff and C. Oliver Burt, one of Marvin Levin's attorneys, are designated as joint signatories; on the other, Creskoff and Daniels are so designated. The order directs Howard J. Creskoff to escrow 10% of the funds he receives under the May agreements and order. It directs Robert C. Daniels to escrow 5% of the funds which he receives. These percentages are based on the net after certain mandatory payments to creditors. The order setting up these two escrow accounts specifically for Marvin J. Levin's potential benefit also requires a certification to him of all funds received by the former partners and by the receiver, Morris M. Shuster, between March 31 and May 25, 1982. No bond was required of any of the escrow agents. Common Pleas in its December 3, 1982 Opinion Sur Entry of Order of Court supported its omission of a bond from the two escrow agents with the following statement:

> References have been made in the appellate pleadings to the effect that error was committed by this Court in not requiring a bond from Howard Creskoff, selected by the other parties in their agreements as their fiduciary. No bond was ever requested by the parties either from Howard Creskoff, or from Morris Shuster who had acted as conservator during the earlier proceedings and who had been selected by the parties themselves.

Appendix to Brief of Appellant, Marvin J. Levin.

Here Marvin Levin's former partners all assert the entry of the September 22, 1982 order was in error because it was

**10.** Freedman, Borowsky and Lorry; Adler, Barish, Daniels, Levin and Creskoff; Adler, Barish, Levin and Creskoff, I, and Adler, Barish, Levin and Creskoff, II.

in the nature of an injunction and, therefore, defective under Pa.R.C.P. 1531 because it did not require a bond of the plaintiff, Marvin Levin, as a condition precedent to its implementation. Superior Court accepted this position and set aside that portion of the Common Pleas order, but it affirmed the Common Pleas direction to certify the accounting of fees to Levin. In doing so, Superior Court necessarily rejected former partner, Robert C. Daniels's argument, first made on the appeal to it, that Common Pleas lacked *in personam* jurisdiction over him because he was not named as a defendant nor served by original process in Marvin J. Levin's complaint against the second successor firm, consisting of those partners remaining after Daniels withdrew.[11]

Daniels now appeals to us raising the same issue of personal jurisdiction in his brief. Marvin Levin cross appeals arguing that no plaintiff's bond should be required on the facts of this case.

## II

There is no merit to appellant Daniels's argument that Common Pleas lacked jurisdiction to order him to serve as an escrow agent and set aside a certain percentage of the funds he is receiving from the settlements in these cases. *In personam* jurisdiction over Daniels was established when he brought his equity action against Marvin Levin and his other partners. That action was formally consolidated with Marvin Levin's complaint and dealt with in Judge Malmed's order of February 22, 1982.[12] Appellant Daniels himself invoked the aid of the court. He cannot now be heard to say that a court of equity has no personal jurisdiction over him with respect to distribution of the funds received as a result of that aid. Moreover, appellant waived

11. Although Superior Court's *in personam* jurisdiction over Robert C. Daniels was not raised in the record, counsel for Daniels has included with his brief an affidavit that the issue was raised in oral argument before that court.

12. *Supra*, Note 7, at 519.

the issue of the court's jurisdiction over his person when he failed to raise it at the time these cases were consolidated. His argument confuses the issue of jurisdiction over the subject matter, which may be raised at any time under Pa.R.C.P. 1032, with the issue of personal jurisdiction. Objections to jurisdiction over the person are waived if not raised promptly.[13]

## III

Marvin Levin's cross-appeal raises the issue of whether Superior Court was correct in analogizing the appointment of an escrow agent to an injunction under Pa.R.C.P. 1531. That rule requires a bond from the plaintiff as a condition precedent to an injunction. Pa.R.C.P. 1533 requires a plaintiff seeking a receiver to file a bond only in those circumstances in which he seeks the appointment without notice to the defendant. An injunction is a court order prohibiting or commanding virtually any type of action. Traditionally a plaintiff seeking a receiver to protect a *res* in which he has an interest has not been required to file a bond unless he asks the court to proceed, for exigent reasons, *ex parte without notice* to the defendant.

Pa.R.C.P. 1533(a)[14] provides:

(a) A temporary receiver may be appointed without notice if required by the exigencies of the case. Except as otherwise provided by an Act of Assembly, such appointment may not be made unless

(1) the plaintiff files a bond in an amount fixed and with security approved by the court, naming the Commonwealth as obligee, conditioned that if the appointment is vacated because improperly made the plaintiff

**13.** 5 Goodrich-Amram.2d § 1504(a):7, at 51 (1977), relating to appearances and Pa.R.C.P. 1017(b)(1) Preliminary Objections and Pa.R.C.P. 1032, Waiver of Defenses.

**14.** Rule 1533 continues the practice with respect to bonds in receiverships set forth in the Rules of Equity Practice which this Court promulgated on May 30, 1924, *published in* George M. Henry, *Equity Jurisdiction and Practice in Pennsylvania* 300 (1933). This rule was incorporated and restated in 1951 in Pa.R.C.P. 1533.

shall pay to any person injured all damages sustained . by reason of such appointment and all legally taxable costs and fees, or

(2) the plaintiff deposits with the prothonotary legal tender of the United States in an amount fixed by the court to be held by the prothonotary upon the same condition as provided for the bond.

A hearing on the continuation or revocation of the appointment shall be held promptly. Notice of the hearing shall be given by the temporary receiver to all persons interested, including creditors and stockholders, if any, whose addresses are known or can be ascertained.

This section demands a bond or other security from a plaintiff only if the exigencies of the case require the appointment of a temporary receiver without notice to the parties. However, the rule does not require security from a plaintiff when the appointment is made with notice to all parties, as in the present case. 5 Goodrich Amram § 1533(a):2 at 328 (1977).

The continuing partners have cited *Rosenzweig v. Factor*, 457 Pa. 492, 327 A.2d 36 (1974), in support of their theory that the lower court's escrow order is in the nature of a mandatory injunction governed by Pa.R.C.P. 1531. In *Rosenzweig*, we reversed the grant of a preliminary injunction which directed counsel in possession of a settlement check to retain in escrow the portion representing the fee disputed by co-counsel because that order was entered without notice and without a hearing. Appellees have failed to note that Justice Pomeroy's opinion specifically disclaimed any holding on the propriety of the injunctive relief which the lower court had granted. *Id.*, 457 Pa. at 495, 327 A.2d at 38.[15]

Considering the full participation by all the ex-partners, either in person or by their attorneys, in the extended January discussions with the court, it can hardly be said

15. Specifically, Justice Pomeroy stated that "[b]ecause of the procedural irregularities in the issuance of this injunction, we need not decide the appropriateness of the relief granted, or whether, indeed, this is a proper case for equitable relief of any sort." *Id.*

that Common Pleas' February appointment of a receiver was procured *ex parte*. As a result, Judge Malmed apparently saw no need to discuss the matter of a plaintiff's bond and none of the parties raised that question when the order was issued.

Since our rules do not require a plaintiff's bond for a person with the broad powers of a full receiver when all of the parties are present or represented before the court, we are not now inclined to hold that a plaintiff's bond is a *sine qua non* for an order directing two of appellant's ex-partners to set aside a relatively small percentage of the disputed partnerships' funds to provide for his as yet contingent claims. Marvin J. Levin's rights to any portion of the escrowed funds remain to be determined by settlement or further adjudication. Meanwhile the escrowed funds will stay in the custody and supervision of two of his former partners. Their only obligation is to see that the funds in these two accounts are not expended without court approval.

■ The briefs of the continuing partners and Daniels do not clearly distinguish between the issues of whether Marvin Levin should have filed a plaintiff's bond or whether Creskoff and Daniels should be required to give security under Pa.R.C.P. 1533(d), as required of receivers. Because of this confusion we briefly consider the requirements of Rule 1533(d). Present Pa.R.C.P. 1533(d) explicitly requires that a receiver "must" provide a bond.

(d) Except as otherwise provided by an Act of Assembly, a receiver, whether temporary or permanent, must give such security for the faithful performance of his duty as the court shall direct. A receiver shall not act until he has given the security required.

Pa.R.C.P. 1533(d).[16] In our view, the word "must" makes this rule mandatory with respect to the receiver's obligation

16. Rule 1533(d)'s predecessor, Equity Rule 44, stated:
All orders appointing receivers, temporary or permanent, shall require them to give such security for the faithful performance of their duties as to the court shall seem meet.

to provide security and the court's discretion may now be exercised only as to the amount of security imposed. It is this mandatory language that apparently troubled Judge Malmed when he wrote his opinion on the September order.[17] In this case, however, the full-scale receivership ended in May of 1982. The parties now objecting to the absence of a bond thereupon substituted an escrow agent by agreement.[18]

Judge Malmed's order appointing a temporary receiver gave that receiver broad powers over the "property, assets, business and affairs" of the succeeding partnerships, including the duty to inventory "all furniture, fixtures, equipment, interests in real estate, cash on hand or on deposit, choses in action, accounts receivable and client files." It also required the ex-partners, their agents, representatives or employees to deliver to the receiver any and all funds previously received and presently in their possession and any and all payments thereafter received relating to any of the partnerships' files or matters. In contrast the September order, directing Howard J. Creskoff and Robert C. Daniels to set aside a percentage of the funds already in their possession until such time as Marvin Levin's claims against his ex-partners have been established or extinguished, is of limited scope.

■ Under Pa.R.C.P. 1533(d), the only presently relevant inquiry is whether the escrow agents which Common Pleas designated in setting up the two Marvin J. Levin Escrow Accounts should be subject to the bonding requirements applicable to receivers. Under the existing circumstances, without determining whether Common Pleas erred in not requiring a receiver's bond of these custodians, we hold the parties asserting this defect waived the issue when they expressly agreed to forego a bond from Shuster and there-

Henry, *supra* at 300.

17. *Supra*, Note 6, at 518.

18. Again we note that these same parties expressly stated they did not require a bond of the prior court appointed receiver, Morris Shuster.

after substituted their own nominee Creskoff as escrow agent in the basic agreement which underlies the two Marvin J. Levin escrows. To us, the continuing absence of bond on the main escrow contradicts the argument that the parties' rights are violated by its absence on Levin's much smaller derivative escrows. Both the Levin escrow accounts and their joint escrow agents will continue to be subject to the equitable jurisdiction of the court until such time as Marvin Levin's claims are adjudicated or the court approves a negotiated settlement agreement. The escrow agents will answer to the court for any expenditures from the escrow accounts. In the meantime, these funds will continue in their custody and Marvin Levin will have no access to them. Such limited responsibilities are those of a mere custodian and a substantial diminution from the normal authority and responsibilities of a receiver.

For the foregoing reasons we reverse that portion of the order of Superior Court which vacated Common Pleas' appointment of the escrow agents for the two ancillary Marvin J. Levin escrow accounts and affirm the orders of both lower courts requiring the other parties, including Daniels, to certify accounts to Marvin J. Levin. Case remanded to the Philadelphia Court of Common Pleas for further proceedings consistent with this opinion.

NIX, C.J., files a concurring opinion.

McDERMOTT, J., concurs in the result.

LARSEN and PAPADAKOS, JJ., did not participate in the consideration or decision of this matter.

NIX, Chief Justice, concurring.

I agree with the majority that appellant Daniels' claim that the court of common pleas lacked *in personam* jurisdiction over him was not timely raised and is therefore waived. *Tops Apparel Manufacturing Co., Inc. v. Rothman,* 430 Pa. 583, 244 A.2d 436 (1968); *Crown Construction Co. v. Newfoundland American Ins. Co., Ltd.,* 429 Pa. 119, 239 A.2d 452 (1968); *Yentzer v. Taylor Wine Co.,* 409

Pa. 338, 186 A.2d 396 (1962); *Johnson Adoption Case,* 399 Pa. 624, 161 A.2d 358 (1960); *Hauger v. Hauger,* 376 Pa. 216, 101 A.2d 632 (1954); *Ciammaichella Appeal,* 369 Pa. 278, 85 A.2d 406 (1952); *see* Pa.R.C.P. 1017(b), 1032, 1501, 1509.

I also agree that the Superior Court's holding that a bond was required as a prerequisite to the issuance of the trial court's September 22, 1982 order must be reversed. Contrary to the Superior Court's unsupported conclusion that the challenged order was a preliminary injunction, the trial court's action amounted to no more than a modification of the original receivership necessitated by circumstances which came to light following its May 25, 1982 approval of the settlement agreements. Since the order was not issued *ex parte,* no bond was required under Pa.R.C.P. 1533(a).

The bond requirements of Pa.R.C.P. 1531, which governs injunctions, clearly have no applicability in the instant case. While it is true that the appointment of a receiver has an injunctive effect, *Schipper Brothers Coal Mining Co. v. Economy Domestic Coal Co.,* 277 Pa. 356, 121 A. 193 (1923); *Jones v. Weir,* 217 Pa. 321, 66 A. 550 (1907); *Treat v. Pennsylvania Mutual Life Insurance Co.,* 199 Pa. 326, 49 A. 84 (1901); *Schlecht's Appeal,* 60 Pa. 172 (1869); *Gravenstine's Appeal,* 49 Pa. 310 (1865), receivership is a distinct form of equitable relief for which specific provision is made under our rules. Pa.R.C.P. 1533. Historically, receivership has been viewed as an appropriate prophylactic device in cases where the apportionment of partnership assets is at issue. *See, e.g., Waddell v. Shriber,* 465 Pa. 20, 348 A.2d 96 (1975); *Herrick v. Caldwell,* 382 Pa. 128, 114 A.2d 130 (1955); *Sellers v. Hanratty,* 343 Pa. 316, 22 A.2d 697 (1941); *Moyn v. Rose,* 245 Pa. 601, 92 A. 39 (1914); *Jones v. Weir, supra; Sloan v. Moore,* 37 Pa. 217 (1860). A receiver may be appointed upon a showing that such relief is necessary to ensure that the partnership assets will not be dissipated during the pendency of the proceedings. *Waddell v. Shriber, supra; Sellers v. Hanratty, supra; Fox v. Curtis, supra; Sloan v. Moore, supra; see also*

*Northampton National Bank of Easton v. Piscanio,* 475 Pa. 57, 379 A.2d 870 (1977); *Credit Alliance Corp. v. Philadelphia Minit-Man Car Wash Corp.,* 450 Pa. 367, 301 A.2d 816 (1973). Each of the escrow arrangements ordered by the trial court was issued for that purpose, and is properly characterized as a receivership. There is no basis for the assertion that the September 22, 1982 order, unlike prior orders entered in this matter, constituted a preliminary injunction bringing into play the provisions of rule 1531.