W. CLAY JACKSON ENTERPRISES, INC., Flexicore of Puerto Rico, Inc., Carolina Dredging Corporation, W. Clay Jackson, Hilda Jackson, Thomas Box, and Robert S. Griggs, Plaintiffs,

v.

GREYHOUND LEASING AND FINANCIAL CORPORATION, the Greyhound Corporation, and the Home Insurance Company, Defendants.

Civ. No. 75–786.

United States District Court, D. Puerto Rico.

May 19, 1977.

Manuel Moreda Toledo, Agrait, Otero & Oliveras, Wallace Gonzalez-Oliver, San Juan, P.R., Gonzalez & Torres, Santurce, P.R., for plaintiffs.

Roberto Boneta, Francis & Doval, San Juan, P.R., for defendants.

## OPINION AND ORDER

TORRUELLA, District Judge.

This matter is now before the Court upon a duly opposed Motion to Dismiss for lack of *in personam* jurisdiction filed by Code-fendants Greyhound Leasing and Financial Corporation ("Greyhound Leasing") and Greyhound Corporation ("Greyhound"). Several exhibits together with extensive memoranda have also been filed by the parties in support of their respective positions.

This is an action for damages based upon the allegedly wrongful attachments levied

upon Plaintiffs' assets by the concerted actions of Codefendants Greyhound Leasing and Greyhound during a litigation prosecuted in the Superior Court of the Commonwealth of Puerto Rico by Greyhound's alleged agent and alter-ego subsidiary Boothe Leasing Corporation of Puerto Rico ("Boothe Leasing"), a corporation which is presently inactive and not a party to this action. The Home Insurance Company has also been joined as Codefendant as the issuer of the attachment bond covering the aforesaid litigation. The jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. § 1332.

The movants have been served with process in accordance with Puerto Rico's Long Arm Statute (Rule 4.7 of the Rules of Civil Procedure of Puerto Rico, 32 L.P.R.A.Appendix) which provides as follows:

> ". . . Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said nonresident as *if he were a resident* of the Commonwealth of Puerto Rico, if the action or claim arises as a result of the following:

> "(1) Such person or his agent carries out business transactions within Puerto Rico, or

> "(2) Executes *by himself or through his agent,* tortious acts within Puerto Rico." (Emphasis Supplied).

At this juncture, we should point out that this Rule was amended by the Commonwealth ". . ." to incorporate to our procedural law the modern tendency which is to extend the jurisdiction of the state courts over nonresidents in the forum." *Legislature of Puerto Rico, Journal of Proceedings,* 1784 (1965); also see: *Medina v. Superior Court,* 177 C.A. 1975 (November 6, 1975); *Integrated Ind. Inc. v. Continental Mill Co.,* 385 F.Supp. 883 (D.C.P.R., 1974).

The movants contend that Plaintiffs have not complied with the requirements of this Statute because Greyhound Leasing and Greyhound have not had the necessary minimum contacts with this forum. Hence, the proposition is advanced that said Codefendants are beyond the personal jurisdiction of this Court and that the causes of action filed against them should be dismissed.

The precise issue before us is whether the statute in question is applicable to the circumstances of this case. This inquiry is dual, since the question whether the assertion of jurisdiction comports with the Federal Constitution is to be decided under federal law, while the scope of the local statute is a matter of state law. *Waltham Precision Instrument Co. v. McDonnell Air. Corp.,* 310 F.2d 20 (C.A. 1, 1962).

A threshold question is presented by Plaintiffs' proposition that long arm derivative jurisdiction over a foreign corporation arises when the parent corporation (i. e., Greyhound Leasing) so controls and dominates the activities of its resident subsidiary (i. e., Boothe Leasing), that the latter's separate corporate existence is in effect disregarded by the parent. It is contended that the exercise of such control and dominion over Boothe Leasing converts said corporation into a mere instrumentality or adjunct of Greyhound Leasing which justifies the piercing of the corporate veil in order to hold Greyhound Leasing responsible for the torts of its subsidiary.

This case abounds with instances evincive of the close control and supervision which Greyhound Leasing exercised over the affairs of its subsidiary: Greyhound Leasing owns 100% of the stock of Boothe Leasing; there are common directors and officers in both corporations; Boothe Leasing never had a business office in Puerto Rico nor an independent and separate business office at the parent's headquarters; Greyhound Leasing paid a substantial amount of the attorney's fees in Boothe Leasing's litigations; Boothe Leasing never paid dividends to Greyhound Leasing, its sole stockholder; Greyhound Leasing controlled and supervised the disposition of Boothe Leasing's leasing equipment and understood it to be its own (see Exhibits 13, 14, 15); the monthly rentals derived from Boothe Leasing's leases were deposited in Greyhound Leasing's bank account (see Exhibits 29, 30, 31,

32 and 34), and the parent closely supervised those deposits (Block 2, Exhibit 12); Boothe Leasing's income statements were consolidated with Greyhound Leasing's.

A careful evaluation of these factors clearly demonstrates the high degree of supervision and control which Greyhound Leasing exercised over the activities of Boothe Leasing and that the latter was but a mere *alter ego* of the former.

■ When viewed in their totality, the circumstances in this case point towards the existence of an agent, not of a principal, for purposes of long arm jurisdiction.[1] See, *Eddie Dassin, Inc. v. Darlene Knitwear, Inc.,* 387 F.Supp. 958 (D.C.P.R.1974); *Volkswagen Intermericana S.A. v. Rohlsen,* 360 F.2d 437 (C.A. 1, 1966); *Ruiz v. Economics Laboratory, Inc.,* 290 F.Supp. 701 (D.C.P.R., 1968); *Fisher v. First Nat. Bank,* 338 F.Supp. 525, 529 (S.D.Iowa, 1972), appeal dismissed, 466 F.2d 511 (C.A. 8, 1972); *Tokyo Beoki (U.S.A.), Inc. v. S.S. Navarino,* 324 F.Supp. 361 (S.D.N.Y., 1971).

However, we need not explore this question in detail, inasmuch as there is a more important basis under which jurisdiction over both Codefendants must be assumed. Codefendants have been brought to suit under the "tortious act" provision of Rule 4.7. The Complaint herein recites:

"On or about August, 1966, codefendants Greyhound and Greyhound Leasing conspiring among themselves and with Boothe Leasing Corporation of Puerto Rico, a Puerto Rican Corporation which was a wholly owned subsidiary of Greyhound Leasing and acting *jointly, knowingly, willfully, wrongfully and in concert among themselves and with the said Boothe Leasing* with the purpose of causing the wrongful attachment of assets of Plaintiffs in Puerto Rico . . . . took and caused all the actions hereinafter set forth . . . ." (Emphasis added).

Plaintiffs argue that both Greyhound Leasing and Greyhound are joint tortfeasors in the wrongful attachments alleged in this action. In this context, we find that Plaintiffs have made a sufficient showing of the supervisory role performed by Greyhound Leasing over the litigation wherein the attachments giving rise to this action were executed. There is a letter from Juan F. Doval, Esq., to M. G. Roth, Vice-President of Greyhound Leasing in Arizona, informing him about the progress of the litigation and expressing that "as soon as Clay Jackson gives us an offer of settlement we will submit it to you." (Exhibit 37). There is also a letter from Joseph Novak, Esq., to John A. Dustin, of Greyhound Leasing requesting that some of the items attached be released in exchange for the placing of a chattel mortgage thereon. (Exhibit 39). This letter was subsequently answered by Raymond S. Saint on the stationery of Greyhound Leasing, stating that there would be no releases of the attached equipment except pursuant to an agreeable settlement. (Exhibit 40). We also note a report addressed to John A. Dustin of Greyhound Leasing concerning the equipment object of the attachment (Exhibit 42), as well as a letter from the Vice-President of Boothe Leasing to Greyhound Leasing in California, enclosing his personal invoice for the time expended in the personal inspection of the attached equipment (Exhibit 43).

■ The foregoing reveals the extent of Greyhound Leasing's decisional power

---

1. Defendants rely on *Cannon Mfg. Co. v. Cudahy Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925) as supportive of the view that jurisdiction is not to be asserted over a nonresident parent corporation, no matter the extent of control. We cannot agree with this construction. Not only was *Cannon* decided long before the Supreme Court announced its landmark decision in *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), but in *Cannon,* no question of the constitutional powers of the State was presented. The claim that jurisdiction existed was "not rested upon the provisions of any state statute or upon any local practice dealing with the subject." *Cannon Mfg. Co. v. Cudahy,* supra, 267 U.S. at 336, 45 S.Ct. at 251. Such is clearly not the case here. Moreover, the inapplicability of *Cannon* under exceptional circumstances, similar to those present in this case, has been recognized by a myriad of subsequent court decisions, some of which are cited in the text of this opinion.

and particular interest in the events that stemmed from the suit formally initiated by its wholly owned subsidiary against Plaintiffs herein.[2] In evaluating the effect of said control and active participation upon the matter now before the Court, we must keep in mind that a joint tort-feasor relationship exists when the injuries claimed arise out of the combined or concurrent wrongful actions of two or more persons. See *Garcia v. Government of the Capital,* 72 P.R.R. 133 (1951); *Morales v. Castro,* 85 P.R.R. 275, 282 (1962); *Prado v. Quiñones,* 78 P.R.R. 309, 330–331 (1955). Clearly, the circumstances summarized above are sufficiently revelative of such a relationship for purposes of the instant Motion. Therefore, and without intimating any view on the ultimate merits of this case, we are bound to assume jurisdiction over Greyhound Leasing. See Prosser, *The Law of Torts,* Sec. 46, pp. 291–292 (4th ed. 1971).

Codefendants claim that the alleged wrongful conduct, having taken place outside the Commonwealth, cannot form the basis of jurisdiction even when the injury has been felt within Puerto Rico. The case of *A. H. Thomas Co. v. Tribunal Superior,* 98 P.R.R. 864 (1970) is cited in support of this view.

After a careful reading of the decision in *A. H. Thomas,* supra, we find it is not controlling. That case involved a claim for personal injuries sustained by a chemistry student when a glass tube broke and cut some tendons of her right hand. An action was instituted against the University of Puerto Rico and its insurer. Thereafter, a third party complaint was brought against Arthur H. Thomas Company, in which it was alleged that the glass tube had been bought by the University from said third-party defendant. The Supreme Court ordered the dismissal of the third party complaint after finding that the evidence of-fered by the third party plaintiff was insufficient to establish the existence of minimum contacts.[3]

The Court in *Thomas* limited its inquiry to whether third party plaintiff had sufficiently shown that the third party defendant was "doing business" in Puerto Rico. The Court concluded that the evidence did not establish that A. H. Thomas Co., had performed business transactions in Puerto Rico.

It is thus discernible that *A. H. Thomas* has no application to the case at bar. Plaintiffs herein are not attempting to assert jurisdiction under the "doing business" provision of Rule 4.7. Obviously, that provision has no application where, as here, the complaint alleges the commission of a tort in Puerto Rico. See *Orbit International Inc. v. Jarecki Corporation,* Civil 73–976, Opinion of August 18, 1976. This, coupled with the entirely different factual background of this case, precludes us from relying upon *A. H. Thomas,* supra.

Indeed, the circumstances present in *Orbit International Inc.,* supra, were much more resemblant to the facts in *A. H. Thomas* than those asserted in the instant case. In *Orbit,* the existence of *in personam* jurisdiction over a nonresident corporation was also alleged under the "tortious act" provision of the long arm statute. A third party complaint was filed against Gulf and Western Industries, Inc., alleging that the Defendant purchased from Gulf and Western an electronic control system to be incorporated in the machine whose defective condition gave rise to the litigation. The Third Party Defendant was not authorized to do business in Puerto Rico and did not maintain an office or agent in Puerto Rico, nor owned real property in the forum. The electronic equipment sold by Gulf & Western to the Third Party Plaintiff was manufactured in Iowa and incorporated to

---

**2.** Greyhound Leasing's stake in the outcome of that controversy is, to say the least, understandable, since it had become a party to the lease contract in question. (Exhibit 45, Addendum No. 2 to Schedule No. 1).

**3.** That evidence consisted of a purchase requisition made by the employees of the University of Puerto Rico and a purchase order in accordance with the requisition, addressed to a local company and not to Arthur H. Thomas Company. The only reference to the latter was one of identification of the items ordered.

the machine in Michigan. Gulf & Western knew that said machine was to be delivered to a customer of Defendant in Puerto Rico and on several occasions sent an engineer to Puerto Rico to perform certain modifications and engineering work to the machine.

Gulf & Western moved for dismissal contending that the cause of action arose out of a transaction which occurred outside Puerto Rico, that the sale of repair parts to Plaintiff was made pursuant to unsolicited mail orders which did not constitute business transactions in the forum and that the circumstances surrounding its visits to Puerto Rico were insufficient to subject it to service of process in this jurisdiction.

This Court (Toledo, J.) concluded that the above stated circumstances sufficed to place Gulf & Western within the ambit of the Puerto Rico's Long Arm Statute. In reaching this conclusion, the Court considered it unnecessary to decide whether Gulf & Western was "doing business" in the forum. Its knowledge of the identity of the purchaser, the efforts made by said corporation to repair the machine, the selling of repair parts to Plaintiffs and that the fact that Gulf & Western was well acquainted with the forum and with the facts involved in the case were all considered sufficient indicia of minimum contacts with the Commonwealth, rendering Gulf & Western amenable to service of process pursuant to Rule 4.7 of the Puerto Rico Rules of Civil Procedure.[4]

When viewed against the backdrop of *Jarecki* and of the principles already discussed in this Opinion, we are convinced that Greyhound Leasing is amenable to service of process pursuant to Rule 4.7. The same is also true regarding Greyhound. Said corporation has also been brought under the assertion of a joint-tortfeasor relationship. It is Plaintiffs' contention that Boothe Leasing requested the assistance of Greyhound in order to obtain the attachment bond required as a prerequisite to the issuance of the writs of attachment. Thus, Plaintiffs assert that Greyhound requested the attachment bond from the Home Insurance Company, and agreed to indemnify Home from any liability ensuing from the execution of said attachment bond. See Bumper's deposition, at pp. 16–19; Exhibit 11. It also appears that Greyhound sustained the attachment bond in force throughout the years 1966–1975. Exhibits 50, 51, 52.

■ Plaintiffs argue that the attachments ensued because of the execution by Greyhound of the said indemnity agreement and that Greyhound's conduct propitiated the tortious attachments alleged in this case. This we will not explore at the present moment. Suffice it to say that the factors enumerated above at least indicate that Greyhound is well acquainted with this forum and with the facts involved herein. See *Orbit International Inc. v. Jarecki Corporation,* supra, at p. 12. Thus "traditional notions of fair play and substantial justice" are not offended. *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The movants have engaged in continuous activity pertaining to the facts alleged in this action. This is not a case of an isolated item of conduct and therefore, a proper case for jurisdiction is present. See *Aftanase v. Economy Baler Company,* 343 F.2d 187 (C.A. 8, 1965).

■ Moreover, we must also point out that there can be no hardship to Greyhound by having to defend the present suit. Greyhound has not denied that it has voluntarily submitted itself to this Court's jurisdiction by having appeared to assume the defense of the Home Insurance Company. (Exhibit 53). In this context, we fail to see any valid ground why under the present circumstances, this Court should adhere to a technical rule whereby a Defendant can submit itself to our jurisdiction in one claim and at the same time challenge that same jurisdiction in a related claim arising out of the

---

4. Notwithstanding the case of *A. H. Thomas,* supra, the Court in *Jarecki* adhered to the view that, for purposes of long arm jurisdiction, the situs of the tort is where the injury occurs, even if it stems from out-of-state negligence. *Jarecki,* supra, at pp. 7–12; cf., *Coletti v. Ovaltine Food Products,* 274 F.Supp. 719 (D.C.P.R., 1967).

same factual nucleus. See *Jos. Riedel Glass Works v. Keegan,* 43 F.Supp. 153 (D.C.Me., 1942); *Olsen v. Dairyland Mut. Ins. Co.,* 248 F.Supp. 639 (D.C.Mont., 1966); cf. *First National City Bank v. González & Co., Sucr. Corp.,* 308 F.Supp. 596, 599 (D.C.P.R., 1970); *Claudio v. Casellas Mojica,* 100 P.R.R. 760 (1972).

The interpretation given to Rule 4.7 has to be consistent with the legal purpose of the statute. Cf. *Vela Inc. v. Sagner,* 382 F.Supp. 478 (D.C.P.R., 1974); also see *Green v. Robertshaw Fulton Controls Company,* 29 F.R.D. 490 (S.D.Ind.1962). To deny the existence of jurisdiction over Codefendants, given the particular circumstances before this Court, would obviate a rule intended to expand the thrust of the Commonwealth's jurisdiction to its full constitutional limit. *Executive Air Service, Inc. v. Beech Aircraft Corp.,* 254 F.Supp. 415 (D.C.P.R., 1966); *La Electrónica Inc. v. Electric Storage Battery Co.,* 260 F.Supp. 915 (D.C.P.R., 1966). That we are not willing to do.

WHEREFORE, in view of all the aforementioned grounds, the Motion to Dismiss filed by Greyhound Leasing and Greyhound must be and is hereby denied.

Codefendants are granted a period of fifteen (15) days in which to file their responsive pleadings.

This matter is hereby referred to the U.S. Magistrate for an immediate status conference for the purpose of establishing a time table that will allow this case to be set for *trial commencing October 3, 1977.*

IT IS SO ORDERED.