R. Dennis BOWERS and
Roger H. Folts

v.

NETI TECHNOLOGIES, INC.; Network Technologies International, Inc.; Commission on Professional and Hospital Activities; Phoenix Companies, Inc.; Lawrence B. Brilliant; Ronald D. Gregg; John L. Boyle, II; John G. Bassett and Jean Chenoweth.

Civ. A. Nos. 85–1635, 85–1911 and 87–4679.

United States District Court, E.D. Pennsylvania.

June 7, 1988.

William T. Hangley, Steven R. Fischer, Valerie West, Barbara J. Holland, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, Pa., for plaintiffs R. Dennis Bowers and Roger H. Folts.

Michael F. Kraemer, Peter J. Mooney, Gary M. Marek, White & Williams, Philadelphia, Pa., Edward R. Stein, Stein, Moran & Westerman, Ann Arbor, Mich., for defendants Commission on Professional and Hospital Activities, John G. Bassett, Jean Chenoweth and James T. Cochran.

Barbara W. Mather, Anthony Vale, Joann Hyle, Pepper, Hamilton & Scheetz, Robert M. Britton, James B. Jordan, Natalie Habert, Post & Schell, Philadelphia, Pa., Jerold Lax, Schussel & Lifton, Ann Arbor, Mich., for defendants Network Technologies Intern., Inc., NETI Technologies, Inc., National Health Forum, Inc., Lawrence B. Brilliant, Ronald D. Gregg and John L. Boyle, II.

Robert M. Britton, James B. Jordan, Natalie Habert, Post & Schell, Philadelphia, Pa., for defendants The Phoenix Companies, Inc.

Marc J. Sonnenfeld, Shelley Levitan Adler, Morgan, Lewis & Bockius, Philadelphia, Pa., for third-party defendants Lyle P. Bickley and Tim K. Zinn.

Paul C. Madden, Joseph F. O'Dea, Jr., Saul, Ewing, Remick & Saul, Philadelphia, Pa., for third-party defendants American Hosp. Ass'n.

John P. McKelligott, Philadelphia, Pa., William L. Dorr, Harris, Beach, Wilcox, Austin and Levey, Rochester, N.Y., for third-party defendant Cleve L. Killingsworth.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

Before the court in this employment dispute is defendants' Motion for Judgment on the Pleadings in Civil Action No. 87–4679 on Behalf of Defendants Bassett, Chenoweth, Cochran, Brilliant, Gregg, Boyle, II, Network Technologies, International, Inc., National Health Forum, Inc. and NETI Technologies International, Inc. pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs, Bowers and Folts, filed this action seeking recovery under the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.1 *et seq.* (Purdon Supp.1987), of amounts allegedly due them pursuant to their employment agreements with Phoenix Companies, Inc. ("Phoenix"). Plaintiffs seek recovery under the WPCL of: (1) severance payments due in the event of breach of their employment agreements, and (2) the value of their Phoenix stock, which they had the option of selling back to Phoenix at market value upon breach of the agreements by Phoenix. Phoenix is a failed venture and cannot fund these payments, thus plaintiffs seek from other defendants the funds allegedly due from Phoenix. Defendants raise three issues: (1) Whether the severance payments and stock option payments allegedly due to plaintiffs are "wages" under the WPCL and thus compensable; (2) Whether certain individuals[2] (primarily directors) can be held liable as "employers" under the WPCL; and (3) Whether nonresident corporate officers[3] and a nonresident successor corporation[4] are subject to this court's personal jurisdiction. Upon consideration of the pleadings and the voluminous file in this matter, and after oral argument in open court, I grant defendants' motion in part and deny it in part, for the reasons set forth below.

## I. BACKGROUND

On February 10, 1984 Bowers and Phoenix entered into an employment agreement pursuant to which Bowers was employed as Chief Executive Officer of Phoenix for a

---

1. Subject matter jurisdiction for this case is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

2. Lawrence B. Brilliant ("Brilliant"), Ronald D. Gregg ("Gregg"), John G. Bassett ("Bassett"), Jean Chenoweth ("Chenoweth"), and James T. Cochran ("Cochran").

3. 3. Bassett, Chenoweth and Cochran.

4. National Health Forum, Inc. ("NHF").

term of five years at a salary of $95,000 per year plus certain bonuses and benefits. Complaint at paragraph 23. In connection with his employment, Bowers also entered into several other agreements, including a Shareholders Agreement and a Stock Purchase Agreement. It is undisputed that Bowers was a major shareholder, promoter and founder of Phoenix.

The Bowers Employment Agreement provides, in pertinent part, that upon termination of Bowers by Phoenix (other than for cause or by reason of death or disability):

A. COMPANY shall pay to employee as severance pay an amount equal to EMPLOYEE's annual Base Salary at the time of termination, in equal bi-monthly payments over a period not to exceed one (1) year from termination.

B. EMPLOYEE shall have the option, but shall not be required, to sell all or part of the stock then owned by him and the COMPANY shall buy such stock so offered for an amount equal to its then current value ...

Exhibit "B" to amended complaint, paragraph 13.

On March 9, 1984, Folts and Phoenix entered into an employment agreement pursuant to which Folts was employed as Chief Operating Officer of Phoenix for a term of five years at a salary of $90,000 per year plus certain other benefits. Complaint at paragraph 24. The language of the Folts Employment Agreement is substantially the same as the language quoted from the Bowers' Agreement. The Employment Agreements form the basis for plaintiffs' claims under the WPCL.

Bowers and Folts were terminated from their employment with Phoenix on December 7, 1984, and January 7, 1985, respectively. Bowers and Folts thereafter filed civil actions, No. 85–1635 ("Bowers I") and No. 85–1911 ("Bowers II"), against individual and corporate defendants other than Phoenix for, *inter alia*, breach of their employment agreements. Bowers and Folts also instituted arbitration proceedings against Phoenix itself, as required by their agreements, claiming that they were terminated without cause. Complaint, paragraph 38. The arbitrator found that the terminations were without cause, awarded Bowers and Folts severance pay, and ordered Phoenix to fulfill the stock repurchase provisions of plaintiffs' Employment Agreements. Complaint, paragraph 39. The arbitrator declined to arbitrate plaintiffs' claims against Phoenix under the WPCL and plaintiffs subsequently filed this suit. This court entered an Order and Judgment confirming the arbitration award on October 1, 1987. Phoenix has yet to pay Bowers and Folts the amounts to which they were awarded in the arbitration proceedings.

On July 27, 1987, plaintiffs filed their initial Complaint in Civil Action No. 87–4679 ("Bowers III"). Previous complaints filed on behalf of the plaintiffs in Bowers I and Bowers II were consolidated with Bowers III by this court. Bowers III sought payment under the WPCL of the contractual separation payments allegedly due to Bowers and Folts from Phoenix, Boyle (as an officer and agent of Phoenix), and from Bassett, Chenoweth, Brilliant and Gregg (as agents of Phoenix). With the exception of Phoenix, the defendants named in the initial Complaint moved to dismiss the Complaint. After defendants moved to dismiss the Complaint plaintiffs filed an Amended Complaint adding as defendants Cochran (as an officer and agent of Phoenix), NETI (as the alleged alter ego of Phoenix), Network, and NHF (as the alleged alter ego and successor to Phoenix). All defendants except Phoenix moved to dismiss the Amended Complaint. The defendants later withdrew the motion to dismiss and substituted a motion for judgment on the pleadings in its place. It is this motion that is presently before the court.

## II. DISCUSSION

A. *Are the Contractually–Agreed–Upon Separation Payments Allegedly Due to Bowers and Folts Under the Employment Agreements Compensable Under the WPCL*

Defendants argue that the separation pay and stock repurchase payments alleg-

edly due to Bowers and Folts under their Employment Agreements do not fall within the purview of the WPCL.

### 1. Separation Pay

The thrust of defendants' argument is that neither the separation payments nor the payments for shares to be repurchased by Phoenix, are covered by the WPCL because neither of the payments constitute "wages" within the meaning of the WPCL.[5] The WPCL defines wages as follows:

"Wages". Includes all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation. The term "wages" also includes *fringe benefits or wage supplements* whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer.

(Emphasis added). Fringe benefits or wage supplements are in turn defined as:

all monetary employer payments to provide benefits under any employe benefit plan, as defined in section 3(3) of the Employee Retirement Income Security Act … as well as *separation*, vacation, holiday, or *guaranteed pay;* reimbursement for expenses; union dues withheld from the employes' pay by the employer; and *any other amount to be paid pursuant to an agreement to the employe*, a third party or fund for the benefit of employes.

43 P.S. § 260.2a (Purdon Supp.1987) (emphasis added).

■ Given the terms of the Bowers and Folts contracts, which specifically entitle both men to severance pay, and given the WPCL's specific reference to separation pay as a protected fringe benefit, I cannot

dismiss plaintiff's severance pay claim. In fact, even prior to the 1977 amendment, which specifically brought severance pay under the coverage of the Act, at least one court had recognized that such pay was protected. *See Heimenz v. Pennsylvania Power & Light*, 75 D. & C.2d 405 (Lycoming 1976). Thus, defendants' motion for judgment on the pleadings on this claim is denied.

### 2. Stock Repurchase Payments

■ Nor may plaintiff's claim to the stock repurchase payments be dismissed. Although defendants argue that such payments were not true "wages", earned by plaintiffs, I find to the contrary. For purposes of this motion for judgment on the pleadings, I conclude that the stock repurchase payments were offered by defendants to plaintiffs to encourage plaintiffs to join Phoenix as employees. Like other fringe benefits, which are offered to employees when they first join a company, the stock repurchase payments were not provided to the employees on a weekly or even annual basis. Nevertheless, they were certainly "wages" within the broad definition of the WPCL in that they were payments pursuant to agreement, and they were offered to plaintiffs as employees, and not for some reason entirely unrelated to their employment by Phoenix. Accordingly, I deny defendants' motion to dismiss the WPCL claim with respect to the stock repurchase payments.

### B. *Can Certain Individual Defendants be Considered "Officers" or "Agents" of Phoenix in Order to Impose Upon Them Civil Liability under the WPCL*

Certain individual defendants assert that they are not liable as "employers" under

---

**5.** Defendants also argue that any amounts claimed as wages under the WPCL must be "earned" prior to termination and cite several cases in support of such a proposition. Defendants' argument fails both because the cases cited precede the amendment to the WPCL, which added the pertinent "fringe benefits" provision, and because the current portion of the statute that uses the term "earned" is not applicable to the fringe benefit portion of the statute. Defendants' reliance on § 260.5 of the WPCL to bolster their "earned" argument is misplaced. A thorough reading of the statute shows a clear delineation between fringe benefits and wage supplements and other forms of payment. Section 260.5 does not deal with fringe benefits whatsoever, but rather deals with employees who are separated from their employment prior to the payroll date. Section 260.3(b) is the section that deals with liability for unpaid separation pay and the term "earned" is significantly absent from this section.

the WPCL because they were neither officers nor agents of Phoenix when Bowers and Folts were terminated. The WPCL's definition of "employer" for purposes of civil liability:

Includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth.

43 P.S. § 260.2a.[6]

Defendants argue first, that Bassett, Brilliant, and Gregg cannot be employers within the purview of the WPCL because they were directors and thus by definition could not be agents of Phoenix. Defendants further argue that Chenoweth and Cochran are not employers because they were neither officers nor directors of Phoenix during the pertinent time period.

### 1. Bassett, Chenoweth and Cochran

I need not determine whether Bassett's, Chenoweth's or Cochran's actions amount to such activity as to subject them to liability under the WPCL because they are not subject to this court's personal jurisdiction. *See* discussion on personal jurisdiction, *infra.*

### 2. Brilliant and Gregg

On a motion for judgment on the pleadings the court must review the complaint in the light most favorable to the plaintiff, with every doubt resolved in plaintiff's favor. Plaintiffs' claim against Brilliant and Gregg under the WPCL should not be dismissed unless it "appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Plaintiffs have alleged that at all relevant times Brilliant and Gregg were agents of Phoenix. Plaintiffs' Amended Complaint at paragraph 21. Defendants con-

test this fact and assert instead that the plain meaning of the term director precludes the application of the term "agent". Defendants also argue that the WPCL should be strictly construed and that because no court has found directors liable under the WPCL they should be immune from liability.

■ I do not find that the terms "agent" and "director" are mutually exclusive. The Restatement Second of Agency § 14C provides in pertinent part:

[A director] may, and frequently will, be appointed an agent of the corporation. For example, the board may exercise its express or implied power to confer authority upon him to act for the corporation.... In [this case], he is necessarily an agent, and normally a general agent, of the corporation....

Restatement Second of Agency § 14C, Comment b. Thus I must reject defendants' argument that their status as directors precludes a finding that they acted as agents.

■ Nor do I find persuasive defendants' other argument on this point. The mere fact that no court has ruled that a corporate director may be held liable under the WPCL does not foreclose this court from so ruling if the appropriate facts are present.

Finally, I also reject defendants' argument that I must strictly construe the WPCL to preclude directors from being identified as "agents" and thus "employers" under the act. Under Pennsylvania rules of statutory construction the civil provisions of the WPCL are to be liberally construed. *See* 1 Pa.C.S.A. § 1928(c). In particular, the Pennsylvania Superior Court has determined that the term "employer" under the WPCL is to be given a liberal construction. *Todora v. Jones & Laughlin Steel Corporation,* 304 Pa.Super. 213, 220, 450 A.2d 647, 650 (1982).

---

**6.** The definition of "employer" for the purpose of criminal liability is different and more narrow. *See* 43 P.S. § 260.11a. Defendants' reliance on interpretations of the term "employer" taken from the criminal liability context is therefore irrelevant and misplaced because plaintiffs seek only civil liability under the WPCL.

Given this rule of statutory construction, the facts alleged by plaintiffs are sufficient to identify Brilliant and Gregg as agents and employers. Plaintiffs have specifically alleged that Brilliant and Gregg acted as agents for the corporation and directly participated in the decision to terminate plaintiffs' employment and to withhold contractually agreed upon separation payments due plaintiffs in violation of the WPCL. Further discovery may prove these allegations untrue; however at this juncture I must accept them. As either an agent for the corporation or a decision-policy maker, defendants fall within the purview of the WPCL. *See Laborers Combined Funds v. Mattei*, 359 Pa.Super. 399, 406, 518 A.2d 1296, 1300 (1986) (the obligation for liability under the WPCL is placed on the decision makers of the corporation). *Cf. Central Pa. Teamsters Pension Fund v. Burten*, 634 F.Supp. 128, 131 (E.D.Pa.1986) ("absent some indication that [an employee] exercised a *policy-making* function in the company, [that employee] is not among the class of persons who may be liable under the WPCL") (emphasis added). Thus, while ordinarily it may be unusual for board members to be involved in corporate decisions such as these, plaintiffs allege that this is not the usual case. Thus defendants' motion for judgment on the pleadings with respect to this claim must be denied.

### C. Personal Jurisdiction Over Defendants Cochran, Bassett, Chenoweth and NHF

Defendants argue that this court lacks personal jurisdiction over three individuals, Basset, Chenoweth and Cochran, and over NHF, the successor corporation to Phoenix. In support of their Fed.R.Civ.P. 12(b)(2) motion, defendants have attached brief affidavits recounting their alleged lack of contacts with this forum.

In considering a motion for judgment on the pleadings, the court ordinarily takes as true the allegations in the complaint. However, this general rule does not apply where the movant is challenging *in personam* jurisdiction. When the defendant mounts such a challenge, the plaintiff bears the burden of proving that the defendant's contacts with the forum are sufficient. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (citation omitted). The plaintiff must come forward with sufficient jurisdictional facts by affidavit, depositions or other competent evidence to establish the court's jurisdiction over the defendant. *Time Share*, 735 F.2d at 66–67, *Allen Organ Co. v. Kawai Musical Instruments Manufacturing Co., Ltd.*, 593 F.Supp. 107 (E.D.Pa.1984).

Pursuant to Fed.R.Civ.P. Rule 4(e), this court may exercise personal jurisdiction over nonresident defendants to the extent permitted by the laws of Pennsylvania. Under Pennsylvania's long-arm statute, 42 Pa.C.S. § 5301, *et seq.*, there are two bases by which a non-resident defendant may become subject to the jurisdiction of this court. The first, general jurisdiction, exists when a non-resident defendant is carrying on a "continuous and systematic part of its general business within [the] Commonwealth." 42 Pa.C.S. § 5301. A defendant found to maintain such a presence is subject to the court's jurisdiction even if the cause of action does not arise out of or is unrelated to the defendants' forum related actions. 42 Pa.C.S. § 5301(b). *Dollar Savings Bank v. First Security Bank of Utah*, 746 F.2d 208, 211 (3d Cir.1984).

If, on the other hand, the defendant is not usually found within the state, but the cause of action arises from defendant's forum-related activities, personal jurisdiction over that defendant is specific. Section 5322 of the long arm statute authorizes the exercise of "specific jurisdiction" over out-of-state defendants in suits arising out of the defendants' forum related activities.

In addition, 42 Pa.C.S. § 5322(b) expressly provides that jurisdiction is authorized "to the fullest extent allowed under the Constitution of the United States." Because Pennsylvania's long arm statute expressly incorporates the federal due process standard, it is only necessary to inquire whether the exercise of jurisdiction over defendants Bassett, Chenoweth, Cochran and NHF offends due process. *Van*

*Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 490 (3d Cir.1985).

Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In other words, defendants must have such minimum contacts with Pennsylvania sufficient enough to make it reasonably foreseeable that they might be called upon to defend an action here. Where a forum seeks to assert specific jurisdiction over a non-consenting out-of-state defendant, the fair warning requirement is satisfied if the defendant has "purposely directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182 (citations and footnotes omitted).

### 1. Defendants Bassett, Chenoweth and Cochran

Defendants argue that personal jurisdiction does not exist because Bassett, Chenoweth and Cochran do not have sufficient contacts with Pennsylvania and that any contacts they may have had do not count as personal contacts for purposes of jurisdictional analysis because they were in their corporate capacity. Defendants further argue that defendants' alleged violation of the WPCL is not a sufficient basis for the exercise of "specific jurisdiction" because the alleged violation occurred outside of Pennsylvania.

Plaintiffs argue that two defendants, Bassett and Chenoweth should be subject to jurisdiction in this action because they consented to jurisdiction in Bowers II and thus have waived their right to object to jurisdiction in Bowers III. Plaintiffs alternatively argue that the presence of defendants in Bowers II subjects defendants to jurisdiction in Bowers III under a pendent personal jurisdiction theory. Plaintiffs further argue that defendants have committed acts or omissions that bring them within the reach of Pennsylvania's long-arm statute and that the fiduciary shield doctrine—

the doctrine protecting individuals from jurisdiction for actions undertaken in their capacity as corporate officers—does not apply.

The parties do not dispute that Bassett and Chenoweth have chosen to contest Bowers II on the merits. However, Bowers II is a separate action, and it does not follow that Bassett and Chenoweth have consented to jurisdiction in this action which involves significantly different claims. Plaintiffs cite several cases in support of the proposition that once a judicial proceeding is begun with jurisdiction over the party concerned, it is within the court's power to bind the party to subsequent proceedings which arise out of the original cause of action. These cases are all inapposite. Several involve the assertion of jurisdiction over a plaintiff who initiated the litigation in the forum. *E.g., Levin v. Barish,* 505 Pa. 514, 481 A.2d 1183 (1984). Jurisdiction is more liberally exercised when it is asserted over a plaintiff who has utilized the forum to initiate litigation. *See Restatement (Second) of Conflict of Laws* § 34. The other cases involve further claims in the same action, not a separate action, or claims against a defendant who had substantial contacts with the forum. *See, e.g., W. Clay Jackson Enterprises v. Greyhound Leasing & Financial Corp.,* 431 F.Supp. 1229 (D.P.R.1977). Thus they, too, are inapplicable.

Plaintiffs make much of the fact that Bassett and Chenoweth allegedly did not object to plaintiffs' amending their complaint in Bowers II to include the WPCL claims. However, this court refused to allow the amendment upon which plaintiffs rely and the actions are indeed separate (although consolidated). Even putting aside this fact, the Restatement (Second) of Conflict of Laws, on which plaintiffs rely, states that jurisdiction continues when a plaintiff amends his complaint if the amendment does not "add or substitute a different cause of action from that stated in the complaint." *Id.* § 26 comment d. It further provides:

The result is different when by an amendment a different cause of action is

added to, or substituted for, the original cause of action, if when the amendment is made the defendant is no longer subject to the jurisdiction of the state. The fact that the court has acquired jurisdiction over the defendant with respect to the original cause of action does not give the court jurisdiction over him as to other causes of action.

. . . .

The fact that by statute or otherwise a plaintiff is permitted to add or to substitute new causes of action by amendment is not sufficient to give the court jurisdiction over the defendant as to such new causes of action if at the time of the amendment the defendant is no longer subject to the jurisdiction of the state.

*Id.* Thus Bassett's and Chenoweth's waiver of jurisdiction and consent to an amendment in Bowers II are irrelevant for purposes of this action, and plaintiff's argument fails.

■ Nor do I find compelling plaintiffs' argument that pendent personal jurisdiction exists over the defendants because of their presence in Bowers II. Although the Third Circuit recognizes the concept of pendent personal jurisdiction, it did so in an action where the defendant was properly before the court on a federal claim. *See Robinson v. Penn Central Co.,* 484 F.2d 553 (3d Cir.1973) (where defendant is properly subject to personal jurisdiction by virtue of a federal statute, the court may exercise *in personam* jurisdiction over him in connection with pendent state claims). By contrast, here plaintiffs seek to have this court adjudicate state law claims that are pendent to other state law claims brought in diversity in a different action. Such a result, while possibly supported by principles of judicial economy, is beyond the scope of pendent jurisdiction.

■ Next, I consider plaintiff's remaining argument that all three defendants have committed acts or omissions that subject them to the reach of Pennsylvania's long-arm statute. Defendant's affidavits make clear that the few contacts they had with Pennsylvania were in their corporate capacity.[7] Individuals performing acts in a state in their corporate capacity are not subject to personal jurisdiction of the courts of that state for those acts. *See Central Pennsylvania Teamsters Pension Fund v. Burten,* 634 F.Supp. 128, 131 (E.D. Pa.1986); *Donner v. Tams–Witmark Music Library, Inc.,* 480 F.Supp. 1229 (E.D. Pa.1979) (rejected on other grounds by *Simkins, infra* ).

■ There is an exception to this general rule for tortious conduct, even if the tort was committed while defendants were acting as corporate officers.[8] However, this exception does not apply in this case. Tortious activity is defined by section 5322(a)(4) of the Pennsylvania long-arm statute. This section is often referred to as the "tort out/harm in" provision of the statute.[9] Plaintiffs argue that their claims

---

7. Cochran is a resident of Michigan. His only contacts with Pennsylvania were two visits on behalf of defendant corporation Phoenix and two visits on behalf of defendant corporation CPHA. Cochran affidavit, p. 1 and 2.

  Bassett is a resident of Michigan who resided in Pennsylvania from 1966–1970 when he was a student at the University of Pennsylvania. His only contacts with Pennsylvania other than during his student days were one visit on behalf of defendant corporation CPHA on a matter unrelated to Phoenix and one visit to attend a board meeting of the Board of Directors of Phoenix. Bassett affidavit, p. 1 and 2.

  Chenoweth is a resident of Michigan. Her only contacts with Pennsylvania were two or three visits on behalf of CPHA and two visits to attend board meetings of Phoenix. Chenoweth affidavit, p. 1 and 2.

8. Some courts have held that even where a corporate officer has committed a tortious act in his official capacity the court nonetheless lacks personal jurisdiction unless the officer has sufficient independent contacts with the forum to support personal jurisdiction. *See* discussion *infra* at p. 358–360.

9. Jurisdictional analysis under this tort out/harm in provision is particularly difficult because of the inherent conflict between the Third Circuit's focus on the defendant's actual contact with the forum, in such cases as *Dollar Savings Bank v. First Security Bank of Utah, N.A.,* 746 F.2d 208 (3d Cir.1984), and § 5322(a)(4)'s effective creation of a fictional contact with the forum. To avoid this conflict, the courts have focused their inquiry on whether the exercise of personal jurisdiction in the "tort out/harm in" cases comports with due

fall within the purview of this provision. Plaintiffs have alleged that Bassett, Chenoweth and Cochran and the other defendants acted together to cause Phoenix not to pay them severance and stock repurchase amounts, and thus defendants violated the WPCL. Judge Troutman of this court previously ruled that a violation of the WPCL did not amount to tortious conduct and would not justify the assertion of personal jurisdiction over non-resident corporate officers where the officers have no personal affiliating circumstances with the forum. *Burten, supra,* 634 F.Supp. at 132. Judge Troutman stated:

> In the absence of activities which are specifically covered by the long-arm statute and absent any indication that defendants purposely affiliated themselves with the Commonwealth of Pennsylvania, they lack the minimum contacts with this forum which would justify the Court's assertion of *in personam jurisdiction* over them.

> . . . .

A general rule extending § 5322(a)(10) [the long-arm statute section for statutory violations] to include statutory violations which have an effect within the Commonwealth, regardless of where they were committed, particularly if applied to corporate officers acting in their corporate capacities, would implicate significant due process concerns. Corporate officers could find themselves personally defending actions in every jurisdiction in which the corporation may be required to defend itself, no matter what

the nature of the individual's contacts with the forum and indeed in the absence of any contacts. Doubtless, there is a plethora of state regulations, throughout the country, to which corporate officers will be subjected and which they could unwittingly violate. It would be manifestly unfair to require such potential defendants, acting solely as corporate officers or agents, to be haled into court everywhere and anywhere that their actions may have some conceivable affect constituting a violation of state law. The corporate. business community serving so many of society's needs cannot be subjected to such burdens and the law, including the [WPCL], does not impose such burden.

*Id. Burten* is directly on point and I find Judge Troutman's reasoning compelling.[10]

■ Moreover, assuming arguendo that plaintiffs' claims against the defendants fall within the tortious activity exception, plaintiffs have failed to establish, by a preponderance of the evidence, that the defendants have sufficient forum-related contacts independent from their contacts as corporate officers or directors. In *Simkins Corp. v. Gourmet Resources Intern.,* 601 F.Supp. 1336, 1345 (E.D.Pa.1985), the court stated:

> I embrace [the Supreme Court's and Third Circuit's] position that a corporate officer or director's actions taken in his corporate capacity are, by themselves, insufficient to bring him personally within the jurisdiction of this court. . . . Although this court finds it "clearly fore-

process. *See, e.g., Simkins Corp. v. Gourmet Resources Intern.,* 601 F.Supp. 1336 (E.D.Pa. 1985) *citing Koenig v. International Brotherhood of Boilermakers,* 284 Pa.Super. 558, 426 A.2d 635 (1980).

**10.** Plaintiffs try to distinguish *Burten* from the case at bar by arguing that *Burten* did not hold that a violation of every statute must occur within the Commonwealth for purposes of § 5322(a)(10). Whether correct or not, plaintiffs' argument is irrelevant because *Burten* did hold that for purposes of jurisdiction under § 5322(a)(10), violations of one specific statute, the WPCL, must be committed within the Commonwealth. Plaintiffs are also incorrect in their assertion that the court ruled primarily on

the basis of due process concerns. Although the court used a due process analysis, it stated: "Having concluded that plaintiffs failed to establish that defendants are covered by the specific terms of the long-arm statute, it is unnecessary to further discuss the question of whether § 5322(a)(10) provides a *constitutionally sufficient basis* for personal jurisdiction under the circumstances of this case." 634 F.Supp. at 132 (emphasis added). Regardless of how the court decided the issue, once a court determines that "specific jurisdiction" exists *vis-a-vis* the long-arm statute, it must still determine whether the exercise of that jurisdiction comports with due process. *See Burger King, supra.* In this case it does not. *See* discussion *infra* at p. 358–360.

seeable" that a corporate officer could be held liable for harm resulting from tortious conduct, it is not "reasonable" [and thus violative of the concept of fundamental fairness which undergirds constitutional due process] for that individual to anticipate that he will be haled into any court in every forum in which the corporation transacts business.... The principles of due process mandate that a court focus on the hardship of forcing a nonresident defendant to litigate in a distant forum.... Therefore, I hold that a plaintiff seeking to establish personal jurisdiction over an individual corporate officer or director on the basis of tortious conduct committed in the exercise of his corporate duties must prove, by a preponderance of the evidence, that the nonresident officer or director independently has sufficient forum-related contacts.

601 F.Supp. at 1345.

Fundamental fairness militates strongly against the assertion of jurisdiction over these three defendants on the claims alleged in this action. Acting in their individual capacities, Bassett, Chenoweth and Cochran have not purposefully availed themselves of the privilege of conducting activities in this state. Even if they foresaw clearly and specifically that their conduct on behalf of Phoenix would cause harm to Bowers and Folts in Pennsylvania, foreseeability alone is not enough for personal jurisdiction under the Due Process Clause. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). As the late Chief Judge Luongo stated:

> Without more, foreseeability of harm and actual harm within the state are not sufficient to permit exercise of jurisdiction over corporate officers for their participation in corporate activity. Were the law otherwise, officers of corporations operating in several states would be faced with a Hobson's choice. They must either disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum.

*PSC Professional Serv. Group v. Am. Digital Systems,* 555 F.Supp. 788, 793 (E.D. Pa.1983). *But see Techno Corp. v. Dahl Associates, Inc.,* 521 F.Supp. 1036 (W.D.Pa. 1981). Since Bowers and Folts have not demonstrated any other affiliations between defendants Bassett, Chenoweth and Cochran and Pennsylvania, I conclude that jurisdiction is lacking.

Therefore, plaintiffs' claims are dismissed as to these three defendants.

### 2. Defendant NHF

Defendants argue that jurisdiction should not be exercised over NHF because there are no minimum contacts between NHF and Pennsylvania sufficient to warrant the exercise of jurisdiction. Defendants submit several affidavits in support of this proposition stating that NHF is a Michigan corporation with its office in Ann Arbor and that NHF never employed any residents of Pennsylvania, nor held a bank account in Pennsylvania, nor sold any products or services in Pennsylvania. Brilliant Affidavit at paragraph 2; Boyle Affidavit at paragraphs 2–5.

Plaintiffs assert that jurisdiction over NHF is proper because it is the successor corporation and alter ego of Phoenix, a Pennsylvania resident. Plaintiffs further argue that NHF has sufficient contacts of its own to subject it to the jurisdiction of this court. In support of their argument, plaintiffs provide several documents that show that NHF was indeed the successor to Phoenix[11], that NHF solicited business in Philadelphia and that NHF was the beneficiary of a contract for personal consulting services with General Electric Information Services ("GEISCO") in Philadelphia.

Plaintiffs have alleged sufficient facts to establish that NHF is liable as a successor to Phoenix. A corporate successor will become liable for the debts and liabilities of the transferee or predecessor upon a showing of one of the following:

(1) the purchaser expressly or impliedly agrees to assume such obligation;

(2) the transaction amounts to a consolidation or merger;

---

**11.** Defendants do not contest this point in their briefs in support of this motion.

(3) the purchasing corporation is merely a continuation of the selling corporation; or

(4) the transaction is fraudulently entered into to escape liability.

*Savini v. Kent Machine Works, Inc.,* 525 F.Supp. 711 (E.D.Pa.1981) (citation omitted). Plaintiffs' facts, allegations and supporting evidence are sufficient to impose liability on NHF under several of the theories stated above. For example, plaintiffs' Amended Complaint sets forth numerous specific factual allegations concerning the transactions by which NHF was formed. Plaintiffs contend that Phoenix became an empty shell and that NHF was created for the purpose of usurping the assets, business and operations of Phoenix, while avoiding responsibility for Phoenix's debts, including the debts owed to plaintiffs. Amended Complaint at paragraphs 42–57.

In support of these allegations, plaintiffs provide numerous documents. Some of the evidence plaintiffs rely on includes: Phoenix board minutes, various letters, several affidavits of former Phoenix officers, agreements regarding Phoenix's assets, and NHF's Articles of Incorporation. This evidence shows that NHF was merely a continuation of Phoenix. Phoenix originally operated out of Blue Bell, Pennsylvania but was relocated to Ann Arbor, Michigan, the same place where NHF began. A number of individuals held positions first with Phoenix, and then with NHF. For example, Boyle who succeeded Bowers as Chief Executive Officer of Phoenix, became the incorporator and Chairman of the Board of NHF. *See* Boyle Affidavit at paragraph 1, Articles of Incorporation and Board Minutes. Boyle, on behalf of Phoenix, signed agreements whereby NHF or NETI (a parent of NHF, shareholder of Phoenix and defendant in this suit) were given a security interest in all of Phoenix's assets and the right to employ Phoenix personnel. (Plaintiffs' Exhibits L and M to their brief in opposition of this motion). Phoenix's assets were transferred for a consideration of $80,400. *See id.* Plaintiffs characterize this consideration as "drastically inadequate". (Plaintiffs' brief, p. 72). Whether adequate or not, the transfer of Phoenix's assets resulted in NHF's employing Phoenix personnel,[12] using Phoenix's office, equipment and computer time-sharing accounts,[13] and basically continuing the same business.[14] Additionally, NETI, the controlling shareholder of Phoenix, became a major shareholder and then only shareholder of NHF. Thus, plaintiffs have provided sufficient evidence to find NHF liable for Phoenix's debts under a number of successor liability theories.

Several courts have applied the rationale of successor liability to the problem of personal jurisdiction.[15] *See, e.g., Goffe v. Blake,* 605 F.Supp. 1151, 1154 (D.Del.1985) (action and conduct of constituent corporation attributable to surviving corporation after merger for purposes of determining survivor's amenability to personal jurisdiction for liabilities of constituent). *See also, Cole v. Caterpillar Machinery Corp.,* 562

**12.** The agreement between NETI and Phoenix provides in pertinent part: "In order to continue the development of the business and to protect our investment [in Phoenix stock], we have organized a wholly-owned subsidiary, National HealthFORUM, Inc. You consent to the employment by us or our subsidiary of employees of your corporations." Plaintiffs' Exhibit L to plaintiffs' brief.

**13.** NHF's Articles of Incorporation list NHF's address as 3285 Miller Road, Ann Arbor, Michigan. However, a letter on NHF corporate letterhead shows the address to be 315 West Huron, Suite 280, Ann Arbor, Michigan, the same address given for Phoenix in one of the agreements. *See* plaintiffs' Exhibits M and O. One can only infer from this coincidence that NHF used Phoenix's office and equipment. Moreover, Phoenix assigned all of its right, title and interest in its furniture, fixtures and computer equipment as well as leases, to NETI who subsequently transferred them to NHF. *See id.* NHF also used the Phoenix account with GEISCO. Plaintiffs' Exhibit P.

**14.** NHF's Business Plan from January 22, 1986, provides in pertinent part: "National Health Forum, Inc., has been formed to provide data to the health care industry in a manner similar to that originally contemplated by Phoenix." Plaintiffs' Exhibit Q.

**15.** Pennsylvania's jurisdictional statute also supports such a result. 42 Pa.C.S. § 5301(b) provides that discontinuance of business in the Commonwealth shall not affect jurisdiction with respect to any act, transaction or omission occurring during the time that business was conducted in the Commonwealth.

F.Supp. 179 (M.D.La.1983) (although successor has no contacts with Louisiana, jurisdiction proper since claim arose against constituent corporation which had significant Louisiana contacts).

Some courts require more of a relationship between the predecessor and successor corporation than just succession. *See, e.g., Totalplan Corp. of America v. Lure Camera, Ltd.,* 613 F.Supp. 451, 458 (W.D. N.Y.1985) (contacts of predecessor attributed to successor after transfer of assets leaves first corporation as mere shell) and *Indian Coffee Corp. v. Procter & Gamble Co.,* 482 F.Supp. 1098 (W.D.Pa.1980) (jurisdiction over a nonresident parent corporation may be obtained on the basis of a subsidiary's forum contacts if the parent and subsidiary are "alter egos").[16]

Even under this more stringent standard, plaintiffs' allegations and papers establish that NHF should be subject to jurisdiction of this court. Plaintiffs have alleged that NHF is an alter ego of Phoenix. Amended Complaint at paragraph 59. Defendants' affidavits do not affirmatively contradict the factual allegations concerning NHF in the Amended Complaint and supporting papers. For purposes of this motion, the allegations must be taken as admitted and viewed in a light most favorable to plaintiff. *See Pharmaceutical Group Services, Inc. v. National Pharmacies, Inc.,* 592 F.Supp. 1247 (E.D.Pa.1984) (in resolving jurisdictional dispute, pleadings and affidavits are to be considered in light most favorable to plaintiff; discrepancies in versions of events presented in affidavits are to be resolved in plaintiff's favor). Because plaintiffs allege that NHF was formed, to a large extent, to avoid Phoenix's liabilities including those to plaintiffs, it is possible to conclude that NHF should have reasonably anticipated being haled into a Pennsylvania court once the sham was discovered. *See Burger King, supra.* Furthermore, if NHF is not subject to personal jurisdiction for its liabilities as a successor corporation, corporations will be encouraged to immunize themselves by fleeing the jurisdiction and formalistically changing their name—a result clearly not supported by the Pennsylvania jurisdictional statute.[17]

Moreover, the case for jurisdiction becomes even stronger when coupled with NHF's own contacts with the forum. In reviewing the material submitted by the plaintiffs regarding NHF's business activities, I am able to conclude that NHF has purposefully availed itself of the opportunity of transacting business in Pennsylvania. NHF solicited business in Pennsylvania by contacting several companies located within the Commonwealth. NHF Business Review, attached as plaintiffs' Exhibit "R" to their brief in opposition to this motion. Other evidence suggests that a large portion of NHF's revenue-producing activity resulted from the use of consultants located in Philadelphia. Plaintiffs' Exhibits A–D to their supplemental brief, reveal that NHF was the beneficiary of a personal services contract with GEISCO that was performed by Philadelphia personnel and that this connection with Pennsylvania consultants existed throughout the majority of NHF's active life. As a result of these transactions with Pennsylvania, it is clear that NHF's contacts were purposeful and it could reasonably anticipate being haled into court in this jurisdiction.

Requiring defendant NHF to submit to the jurisdiction of this forum, based on its assumption of the liabilities of Phoenix and based on its contacts with the Commonwealth, thus does not offend traditional notions of fair play and substantial justice. *See Burger King, supra.* Therefore, defendants' motion for judgment on the pleadings on this claim is denied.

An appropriate order follows.

---

**16.** The Third Circuit intimates it would support such a result. It states in dicta, "factors which may have a bearing on the jurisdictional issue are ... whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 806 (3d Cir.1981).

**17.** *See supra* note 15.